# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1998-KA-01578-SCT

*DAVID E. CRAWFORD a/k/a DAVID EDWARD CRAWFORD*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/07/1998 |
| TRIAL JUDGE: | HON. GEORGE C. CARLSON, JR. |
| COURT FROM WHICH APPEALED: | TATE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID L. WALKER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT S. FLYNN |
| DISTRICT ATTORNEY: | ROBERT L. WILLIAMS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/20/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/10/2000 |

## BEFORE PITTMAN, P.J., BANKS AND COBB, JJ.

## COBB, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. The State charged David E. Crawford with felony sex crimes involving three different victims, two of whom were under fourteen years of age. The Tate County grand jury returned a true bill on the multi-count indictment, and Crawford filed a waiver of arraignment and entered a plea of not guilty. Prior to trial, the court granted the State's motion to amend the indictment to correct the date of the crime. The court also granted Crawford's motion to sever the counts, and he was tried only on the capital rape charge.

¶2. The jury found Crawford guilty of capital rape under Miss. Code Ann. § 97-3-65(1), and the judge sentenced him to life imprisonment. Crawford's motion for a new trial, or in the alternative for a JNOV, was denied.

¶3. Crawford appealed to this Court, raising the following issues:

**I. THE TRIAL COURT ERRED IN ACCEPTING LINDA CHIDESTER AS AN EXPERT WITNESS AND IN APPLYING THE WRONG STANDARD OF REVIEW FOR EXPERT TESTIMONY.**

**II. THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S STANDING OBJECTION TO CHILD SEXUAL ABUSE TESTIMONY BY DR. CHIDESTER.**

**III. THE TRIAL COURT ERRED GRANTING THE STATE'S MOTION TO AMEND THE INDICTMENT AND IN REJECTING THE APPELLANT'S EXPIRATION OF THE STATUTE OF LIMITATIONS AND UNCONSTITUTIONALLY VAGUENESS ARGUMENTS WITH RESPECT TO THE TERM "RAPE" REFERRED TO IN THE STATUTE OF LIMITATIONS STATUTE.**

**IV. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF OTHER ALLEGED FONDLING, SEXUAL BATTERY OF THE VICTIM BY THE APPELLANT NOT REFERRED TO IN COUNT 2 OF THE INDICTMENT.**

**V. THE TRIAL COURT ERRED IN SUSTAINING THE APPELLEE'S RELEVANCY OBJECTION TO THE PROFFERED TESTIMONY OF BETTY JONES.**

**VI. THE DECISION OF THE JURY IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**

## STATEMENT OF THE FACTS

¶4. David E. Crawford, age 55, was married and lived with his wife, the mother of the twelve year old victim. David Crawford is not the victim's natural father, but is her stepfather. During an altercation with his wife, David slapped the victim, and she went next door and called the police and her sister. David's wife and the victim stayed with relatives for two or three days before the wife decided to go back home to David. The victim, who did not want to return home, became upset, hyperventilated and was taken to an emergency room. A hospital nurse contacted the Department of Human Services (DHS), and a DHS social worker interviewed the victim and her mother soon thereafter. During this interview the victim told her mother, for the first time, that David had "messed with her." DHS placed the victim in temporary custody of her aunt, to whom she also disclosed that David had sex with her. The aunt reported this information to DHS, and the social worker scheduled an appointment for the victim to see Dr. Linda Chidester, recognized by DHS as an expert in the field of child sexual abuse. Dr. Chidester diagnosed the victim with pelvic inflammatory disease and opined that she had been sexually penetrated.

¶5. During the trial Dr. Chidester testified that she had been presented to the Supreme Court as ". . . an expert in the field of family practice with special knowledge in the area of child sexual abuse." She also testified that there was no board certification in the subject of sexual abuse. Defense counsel objected to the testimony of Dr. Chidester "that ha[d] to do with anything but the general, physical, normal medical examination . . ." of the victim. In response to this objection, the judge stated that "[t]he record will note the objection to any testimony pertaining to opinion testimony as to child sex abuse." The trial court also declared Dr. Chidester "to be an expert in the field so offered"[1] and that she would be allowed to give opinions pursuant to M.R.E. 702 and 703. Dr. Chidester testified that in her opinion, after full examination of the victim, the findings were "consistent with penetration." Crawford was convicted of capital rape and sentenced to life imprisonment.

## ISSUES AND ANALYSIS

**I. THE TRIAL COURT ERRED IN ACCEPTING LINDA CHIDESTER AS AN EXPERT WITNESS AND IN APPLYING THE WRONG STANDARD OF REVIEW FOR EXPERT**

**TESTIMONY.**

¶6. Crawford asserted that the trial court erred in accepting Dr. Chidester as an expert witness and in applying the wrong standard of review for expert testimony. The DHS social worker who investigated the case made arrangements for the victim to be seen by Dr. Chidester and chose her because she was a recognized expert in the field of child sexual abuse. Defense counsel argued that accepting Dr. Chidester as an expert in any field other than general practice would deny Crawford his due process and fundamental fairness rights as guaranteed by the state and federal constitutions.

¶7. Defense counsel further argued that Dr. Chidester's testimony that the victim had pelvic inflammatory disease which had been sexually transmitted and that her physical findings were consistent with penetration, was impermissible testimony concerning child abuse matters. The State argued that the defense objected to the testimony of Dr. Chidester and not to the tests and techniques which she administered; and therefore, Crawford is procedurally barred from raising on appeal the issue of admissibility of Dr. Chidester's medical examination.

## Standard of Review

Under this Court's standard of review, the admissibility of evidence rests within the trial court's discretion. *Wade v. State*, 583 So.2d 965, 967 (Miss.1991). Unless his judicial discretion is abused, this Court will not reverse his ruling. *Lewis v. State*, 573 So.2d 719, 722 (Miss.1990). The qualifications of an expert in fields of scientific knowledge is left to the sound discretion of the trial judge. His determination on this issue will not be reversed unless it clearly appears that the witness is not qualified. *Wilson v. State*, 574 So.2d 1324, 1334 (Miss.1990); *Smith v. State*, 530 So.2d 155, 162 (Miss.1988).

*Hall v. State*, 611 So.2d 915, 918 (Miss. 1992). "The admissibility of expert testimony is governed by Rule 702 of the Mississippi Rules of Evidence." *Puckett v. State*, 737 So.2d 322, 342 (Miss. 1999). "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. Miss. R. Evid. 702." *Id*. "This Court reviews the trial court's decision to allow expert testimony under the well-known clearly erroneous standard." *Id*. "[A] bright line rule regarding the difference between lay opinion under Miss. R. Evid. 701 and expert opinion testimony under Miss. R. Evid. 702" was recited in *Puckett*. To express an M.R.E. 702 opinion the witness must possess some experience or expertise beyond that of the average, randomly selected adult. *Id*. at 342. "[T]he test is whether a witness possesses peculiar knowledge or information regarding the relevant subject matter which is not likely to be possessed by a layman.' " *Id*. (citing *May v. State*, 524 So.2d 957, 963 (Miss.1988)). In *Hall*, this Court went on to clarify some of the problems with expert testimony concerning child sexual abuse symptoms:

When expert testimony describing behaviors seen in sexually abused children is offered as substantive evidence of abuse, the expert is not describing a syndrome. The expert is certainly not describing Summit's child sexual abuse accommodation syndrome. At the present time, experts have not achieved consensus on the existence of a psychological syndrome that can detect child sexual abuse. Use of the word syndrome leads only to confusion, and to unwarranted and unworkable comparisons to battered child syndrome. The best course is to avoid any mention of syndromes. *Id*. at 69. Other sections of the Myers article support the idea that while testimony as to CSAAS is improper,

testimony by an expert as to certain behavior common to sexually abused children is proper. See *Myers*, at 8, 13, 51, 62-64, 65.

The expert testimony in this case was offered as substantive evidence of abuse and was not describing a syndrome. The State used the word "syndrome" in its direct questioning of Chance, but the witness quickly discounted the use of any such term and instead described what she found to be common behaviors of sexually abused children. The testimony of Sherwood is similar to Chance's.

The decision to hold admissible the expert testimony describing Chad Hall's behavior as common with that of a sexually abused child is within the trial judge's discretion absent an abuse of that discretion. *Wade*, 583 So.2d at 967; *Lewis*, 573 So.2d at 722. The facts support his decision and it is, therefore, upheld.

*Hall v. State*, 611 So.2d at 918, 919. Recently this Court ruled in *Puckett* that even though there is no field in which to classify an expert witness as a qualified expert on child abuse the Court found, after ". . . delineating each witness's qualifications," that the witnesses were properly qualified as expert witnesses in the field of child abuse. *Puckett* at 342. "Based on this record, they were qualified by knowledge, skill, experience, training, and education to assist the trier of fact" and "[a]s experts, they could testify as to common symptoms and behavior which are consistent with sexual abuse." *Id*. (emphasis added).

¶8. Mississippi uses the *Frye* test for determining the admissibility of scientific evidence, even though the United States Supreme Court held, in *Daubert v. Merrell Dow Pharmaceuticals, Inc*. 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993), that ". . . the Federal Rules of Evidence superseded the *Frye* test which required that scientific evidence be 'generally accepted' in the scientific community to be admissible.'" *Gleeton v. State*, 716 So.2d 1083, 1086-87 (Miss. 1998) (citing *Daubert* and *Frye v. United States*, 293 F. 1013, 1014 (D.C.Cir.1923)). Even after adoption of the Mississippi Rules of Evidence, Mississippi has continued to follow the *Frye* 'general acceptance' standard. *Gleeton* at 1087.

¶9. The record reflects that defense counsel asked the court to analyze the qualifications of Dr. Chidester under *Daubert*. The court did not indicate which test would be applied, but stated for the record that his declaration of Dr. Chidester as an expert was based on "case law and pursuant to Rules of Evidence, Rule 702". Defense counsel now asserts that *Frye* should have been the correct test to apply based on this Court's holding in *Gleeton v. State*, 716 So.2d 1083, 1086 (Miss. 1998). The State argues that in *Daubert* the U. S. Supreme Court held that expert testimony is admissible where it is supported by scientifically valid reasoning or methodology, and will assist the trier of fact, and that if the *Daubert* factors are applied, Dr. Chidester's testimony would be admissible as evidence under either the federal or the state standard.

## Analysis

¶10. The record clearly established that Dr. Chidester was tendered as a medical expert in the field of family practice with special knowledge in the field of child abuse, and the determination that her qualifications to testify as to her opinion concerning child abuse matters was in the discretion of the trial judge. Dr. Chidester testified extensively regarding her qualifications. She has practiced medicine in the Town of Mantachie since she moved to Mississippi in 1974, and was licensed as a physician by the State of Mississippi. She is board certified in family practice and has been recertified twice more in the field of family practice as a specialist. She has attended numerous specialized training sessions in the area of child

abuse since 1988. In the year prior to the case sub judice, she examined approximately 150 children in cases alleging child sexual abuse. She has testified in court concerning child sexual abuse "at least 30" times. The trial judge was within his discretion to determine that Dr. Chidester possessed the experience and expertise beyond the ". . . average, randomly selected adult" that would allow her to testify as an expert. *Puckett* at 342. The scientific or specialized knowledge presented in this case certainly assisted the jury to understand the evidence presented during Dr. Chidester's testimony. *Id*. Based on her qualifications by "knowledge, skill, experience, training, and education" as an expert, Dr. Chidester was also qualified to testify as to the common symptoms and behavior consistent with sexual abuse. *Id*. Her testimony would pass muster under either *Daubert* or *Frye*. Since this Court uses the *Frye* test of "general acceptance" in the scientific community, the trial judge did not abuse his discretion in admitting Dr. Chidester's testimony. She testified that she knew more about child sexual abuse than the average physician and that the medical community had made many referrals to her concerning child sexual abuse thus being perceived and accepted within the medical community as a child abuse expert. She testified that with child sexual abuse cases she conducts a "behavioral inventory" that sometimes reflects trauma or other problems that might need to be addressed. She found that the victim had a large amount of discharge and that it was unusual for a child of 12 who had not yet started her period to not feel any discomfort under the tests that the doctor administered on the victim. Dr. Chidester testified that because she found an infection in the victim she conducted a pelvic exam. Based on the history and physical findings Dr. Chidester's opinion was that the victim had been penetrated, consistent with the history that was given to her by the victim.

¶11. Under *Frye*, Dr. Chidester's testimony would be accepted within the medical community and the trial judge did not abuse his discretion in admitting her testimony. It was also admissible under M.R.E. 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Due to Dr. Chidester's other qualifications, experience, and acceptance in the medical community concerning child abuse cases, the trial judge was within his discretion to admit her testimony concerning her findings and her opinion. Thus, the trial judge did not abuse his discretion in allowing Dr. Chidester's testimony as an expert nor did he abuse his discretion or follow the wrong standard in allowing her to testify as to her opinion concerning her findings as to whether the victim had been sexually abused. This issue is without merit.

## II. THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S STANDING OBJECTION TO CHILD SEXUAL ABUSE TESTIMONY BY DR. CHIDESTER.

¶12. This assignment of error is essentially the same as stated in Issue I: that Dr. Chidester was allowed to testify outside her field of expertise and that the jury was presented with irrelevant testimony since the trial court did not accept her as an expert witness in the field of child sexual abuse yet she testified on this subject matter. The State again responded that Rule 702 of the M.R.E. allowed Dr. Chidester's testimony to be admitted.

¶13. Based on our detailed analysis as set forth with regard to Issue I, we agree with the trial court that Dr. Chidester was qualified to testify and that the trial judge did not abuse his discretion in allowing her testimony to be admitted. This issue is without merit.

## III. THE TRIAL COURT ERRED IN GRANTING THE STATE'S MOTION TO AMEND THE INDICTMENT AND IN REJECTING THE APPELLANT'S EXPIRATION OF THE STATUTE

**OF LIMITATIONS AND UNCONSTITUTIONALLY VAGUENESS ARGUMENTS WITH RESPECT TO THE TERM "RAPE" REFERRED TO IN THE STATUTE OF LIMITATIONS STATUTE.**

¶14. The original indictment stated that the offense for which David Crawford was tried and convicted occurred "during the month of July, in the year of our Lord 1996". The prosecution, prior to the day of trial, moved to amend the indictment to reflect that the offense occurred "during the months of May or June, in the year of our Lord 1996." The grand jury returned a true bill on the original indictment on December 10, 1997. The trial began in October of 1998. Crawford argues that the two-year statute of limitations period had expired. The State argues that "[a]lthough Defendant claimed that the prosecution should have amended the indictment prior to the day of trial, the amended indictment does not commence a new prosecution" and that prosecution was commenced within the two-year prescribed period since the original indictment was returned on December 10, 1997.

¶15. Miss. Code Ann. § 99-1-5 (Supp. 1999) provides that the ". . . **prosecution** for such offense be commenced within two (2) years next after the commission thereof." (emphasis added). This Court has also held that "[t]he sexual abuse of children has been recognized as a continuing course of conduct and the statute of limitations does not begin to run until such course of conduct terminates." *Morris v. State*, 595 So.2d 840, 845 (Miss. 1991). "Where a small child is threatened with harm to himself or herself, or family if he or she tells, this tolls Miss. Code Ann. § 99-1-5 until the child is removed from the threatening environment."*Id*. The victim in this case was removed from the home and put into temporary custody of her aunt in July of 1996.

¶16. This Court stated in *Woodall* that commencement of prosecution is defined by Miss. Code Ann. § 99-1-7 (1994) and provides that "[a] prosecution may be commenced, within the meaning of section 99-1-5 by the issuance of a warrant, or by binding over or recognizing the offender to compel his appearance to answer the offense, as well as by indictment or affidavit." Miss. Code Ann. § 99-1-7 (1994). *State v. Woodall*, No. 1998-KA-01133-SCT, 1999 WL 396432, at *2 (Miss. Jun. 17, 1999). "However, the trial court found issuance of a warrant only applies to commence prosecution in misdemeanor cases. In a felony case, as the instant case, the trial court found an indictment was required to commence prosecution." *Id*.

¶17. Under Rule 7.06 of the Uniform Circuit and County Court Rules failure to state the correct date in an indictment shall not render the indictment insufficient. Rule 7.09 provides that ". . . [a]ll indictments may be amended as to form but not as to the substance of the offense charged." The trial judge correctly ruled that the proposed amendment of the indictment as to the date was as to form and not as to substance. (citing *Baine v. State*, 604 So.2d 258 (Miss. 1992)). Amendments to an indictment may be made only if the amendment is immaterial to the merits of the case and the defense will not be prejudiced by the amendment. *Eakes v. State*, 665 So.2d 852, 860 (Miss. 1995). Amendments as to the substance of the charge must be made by a grand jury. *Id*. "The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood would be equally available after the amendment is made."*Id*.; (*See also*, *Shive v. State*, 507 So.2d 898, 900 (Miss.1987). Amendment of the indictment did not prejudice Crawford, as the original indictment, as well as the amended indictment, were both made well within the two-year period of the statute of limitations and thus would not have prejudiced his defense. Therefore, the amendment was immaterial.

¶18. The prosecution was commenced by the initial indictment on December 10, 1997, which was well within two years from the dates the crimes occurred (amended indictment, May or June of 1996; original indictment, July 1996). This sub-issue is without merit.

¶19. Miss. Code Ann., § 99-1-5, (Supp. 1999) which deals with time limitations and exceptions in criminal procedures provides in part:

> A person shall not be prosecuted for any offense, **with the exception of** murder, manslaughter, aggravated assault, kidnaping, arson, burglary, forgery, counterfeiting, robbery, larceny, **rape**, embezzlement, obtaining money or property under false pretenses or by fraud, felonious abuse or battery of a child as described in Section 97-5-39, touching or handling a child for lustful purposes as described in Section 97-5-23, sexual battery of a child as described in Section 97-3-95(c) or exploitation of children as described in Section 97-5-33, unless the prosecution for such offense be commenced within two (2) years next after the commission thereof . . . .

(emphasis added). The statute clearly excludes rape whether or not it was defined as capital rape or rape. Our case law also supports exceptions in capital rape charges, (see *Morris v. State*, 595 So.2d at 845).

¶20. This Court does not agree with Crawford's assertion that the term "rape", as it is referred to in the statute of limitations statute, is unconstitutionally vague. We have spoken to the vagueness issue in a number of contexts, finding that "[A]ll the Due Process Clause requires is that the law give sufficient warning that men may conform their conduct so as to avoid that which is forbidden. (Emphasis added)." *State v. Mays*, 329 So.2d 65, 66 (Miss. 1976). "'[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process.' *Meeks,* 513 So.2d at 566 (quoting *Connally v. General Constr. Co.,* 269 U.S. at 391, 46 S.Ct. at 127). "Generally speaking, a criminal statute is unconstitutional under the due process clause of the Fourteenth Amendment if it is so vague and uncertain that it does not inform those subject to it what acts it is their duty to avoid, or what conduct on their part will render them liable to its penalties.... 'The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'" *State v. Roderick*, 704 So.2d 49, 53 (Miss. 1997). Therefore, this argument is without merit. Crawford has not been denied due process. This sub-issue of vagueness with respect to the term "rape" in the statute of limitations is without merit.

## IV. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF OTHER ALLEGED FONDLING, SEXUAL BATTERY OF THE VICTIM BY THE APPELLANT NOT REFERRED TO IN COUNT 2 OF THE INDICTMENT.

¶21. Prior to trial Crawford moved the trial court in limine to exclude testimony of other alleged sexual acts with the victim, arguing that they occurred at times several months before the alleged rape, "therefore the chain of causation would be broken with respect to the capital rape and the alleged sexual battery activity." (citing M.R.E. 401, 402, 403, 404(b), the Sixth Amendment of the U.S. Constitution and Article 3, Section 26 of the Mississippi Constitution (1890)). Crawford also argued that he was charged with capital rape, not fondling, and not sexual battery. The State argued that M.R.E. 404(b) provides for an exception to the general rule that in criminal prosecutions, evidence of other crimes is not admissible. (citing *Coates v. State*, 495 So.2d 464, 468 (Miss. 1986) (relaxation of general rule and allowed evidence of similar sexual acts

that had occurred on numerous occasions prior to the offense charged); ***Darby v. State***, 538 So.2d 1168 (Miss. 1989) (proof of another crime is admissible where the offense charged and that offered to be proved are so connected as to constitute one transaction); ***White v. State***, 520 So.2d 497, 500 (Miss. 1988) (not error to permit testimony of previous sexual offenses between appellant and his victim, especially where victim is under age of consent).

¶22. The trial judge denied the motion based upon M.R.E. 404(b) and relevancy, case law, the record, and "when considering this proposed evidence under Rule 403 of the Rules of Evidence, that the evidence is relevant and, likewise, its probative value is not substantially outweighed by the danger of unfair prejudice or confusion of the issues or misleading the jury."

¶23. "Determining whether to admit evidence under Rule 404(b) requires a two part analysis. The evidence offered must (1) be relevant to prove a material issue other than the defendant's character; and (2) the probative value of the evidence must outweigh the prejudicial effect." ***Puckett,*** 737 So.2d at 365. Rule 403 is an ultimate filter through which all otherwise admissible evidence must pass. ***Jenkins v. State***, 507 So.2d 89, 93 (Miss.1987). The trial judge correctly admitted testimony of prior sexual acts, which took place over several months prior to Crawford's actually engaging in sexual intercourse with the victim. It was not error to permit testimony of previous sexual offenses between Crawford and the victim, his stepdaughter. ***White v. State***, 520 So.2d at 520. (citing ***Woodruff v. State***, 518 So.2d 669 (Miss.1988)) . In ***White***, this Court stated:

> During the trial D.M. was permitted to testify that Harold White forced her to have sex with him two to three times a week for a period of six months, between May and October of 1984. White made a motion in limine to prevent such testimony, which was overruled. White contends that such testimony was immaterial to the disposition of the case, was highly prejudicial, and tended to show that he was guilty of crimes other than the one in issue. ***Hicks v. State***, 441 So.2d 1359 (Miss.1983), synthesizes this Court's previous holdings on this issue in ***Otis v. State***, 418 So.2d 65 (Miss.1982), ***Speagle v. State***, 390 So.2d 990 (Miss.1980), ***Davis v. State***, 367 So.2d 445 (Miss.1979), and ***Brooks v. State***, 242 So.2d 865 (Miss.1971), and held that those cases control the posture of this particular issue. In all of those cases, this Court held that such evidence is admissible in this limited situation to show appellant's lustful, lascivious disposition toward his particular victim, especially where, as here, the victim was under the age of consent. Most recently, this Court has again held that it was not error to permit testimony of previous sexual offenses between appellant and his victim. ***Woodruff v. State***, 518 So.2d 669 (Miss.1988). There is nothing in this case to distinguish it from any of these previous cases. Therefore, this assignment of error is without merit.

***White v. State***, 520 So.2d at 499-500.

¶24. The trial judge was correct in admitting the testimony under Rule 404(b) regarding prior sexual contact with Crawford. This assignment of error is without merit.

## V. THE TRIAL COURT ERRED IN SUSTAINING THE APPELLEE'S RELEVANCY OBJECTION TO THE PROFFERED TESTIMONY OF BETTY JONES.

¶25. Crawford argues that the trial court abused its discretion by excluding the testimony of Betty Jones, who would have testified that she left her children (females, ages 14 and 10 or 11) in Crawford's care on numerous occasions during 1996 and that they had not been abused. The trial court ruled, based upon

M.R.E. 401 and 402, that the evidence was not relevant and was unrelated to the case before the court and the jury.

¶26. We agree with the trial judge's ruling. Crawford cites *Hughey v. State*, 729 So.2d 828, 831 (Miss. Ct. App. 1998) (defendant's right to present his defense is limited by considerations of relevance and prejudice) and *Terry v. State*, 718 So.2d 1115, 1121 (Miss. 1998) ("defendant was entitled to present her theory of the case and have the jury determine whether someone else could have taken the money. Any fears of confusion the trial judge may have harbored could have been resolved by giving limiting instructions to the jury.").

¶27. In *Terry*, the evidence was relevant to allow the defendant to show other theories on who could have committed the crime in question and should have been admitted. In *Hughey*, the Court of Appeals held that :

> . . . whether Crofford was homosexual was not relevant and also was prejudicial, potentially to Crofford and more certainly to the State. Hughey was not foreclosed from pursuing the store clerk's potential need for money, but was only prevented from asking sexual orientation. He did not ask whether Crofford went to prostitutes, but neither was he blocked from doing so. While Hughey was not permitted to ask Crofford about his sexual orientation, he was allowed to question him as to other possible reasons Crofford might have had to fabricate the robbery story. Those questions included: whether he allowed customers to make purchases on credit, whether he took money from his own register in order to purchase drugs, and whether he and two other individuals stole the money and divided it up later that evening. Hughey was allowed to testify as to his own version of the events, with the exception of Crofford's alleged homosexuality and drug habit.

*Hughey v. State*, 729 So.2d at 831. The testimony of Betty Jones that Crawford did not abuse other children he kept, would not be relevant as to what occurred between Crawford and the victim. Betty Jones could not know whether he did or did not abuse her children under his care; she was not present. It is important to note that the victim kept silent for almost a year about sexual acts occurring frequently in her own home. She did not even tell her mother, "because I was scared."

¶28. The trial judge did not abuse his discretion in excluding Betty Jones's testimony. This issue is without merit.

## VI. THE DECISION OF THE JURY IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶29. Crawford argues that there was no DNA evidence presented against him, no physical evidence demonstrating that a rape had occurred, and that the victim was not credible since she testified that she had never lied in her life and that she had only seen Dr. Chidester one time and she contradicted herself about the number of times that she had been raped. The State argued that the jury found Crawford guilty of capital rape based upon the testimony of the victim, the victim's aunt, the social worker, and the doctor who examined the victim. The State further argued that the victim did not contradict herself about the number of times Crawford allegedly had sex with her. The record reflects that the victim in the case sub judice was under the age of fourteen years. Dr. Chidester testified that she performed a comprehensive physical exam on the victim and found that the victim had a large amount of discharge and that her vaginal opening was very large, such that the doctor was concerned about the possibility of an infection. She testified that the

victim was very tender in the pelvic area, and she diagnosed her with pelvic inflammatory disease. The doctor stated that based on the history, physical findings and observations, her opinion was that her findings were consistent with sexual penetration. There was also testimony from the aunt, the social worker, and the victim that connected the alleged rape with the defendant. The victim stated on several occasions that during the first six months of 1996, her stepfather had abused her once or twice a week; that he had penetrated her about 10 times; that he had ejaculated while having sex with her, claiming that "wet stuff would like go on me or on my bed somewhere".

¶30. The standard of review for the determination of whether a jury verdict is against the overwhelming weight of the evidence is that this Court must "accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." *Collier v. State*, 711 So.2d 458, 461 (Miss. 1998) (citing *Herring v. State*, 691 So.2d 948, 957 (Miss.1997); *Jackson v. State*, 689 So.2d 760, 766 (Miss. 1997)). A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction "unconscionable injustice" *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983).

¶31. "[O]ur case law clearly holds that the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence, especially if the conduct of the victim is consistent with the conduct of one who has been victimized by a sex crime." *Collier v. State*, 711 So.2d 458, 461 (Miss. 1998) (citing *Christian v. State*, 456 So.2d 729, 734 (Miss.1984); *McKinney v. State*, 521 So.2d 898, 899 (Miss.1988); *Otis v. State*, 418 So.2d 65, 66 (Miss.1982)).

¶32. We have examined the record and these arguments. There was ample evidence to support the finding of the jury and the trial court, such that the verdict, if allowed to stand, does not sanction an unconscionable injustice. This issue is without merit.

## CONCLUSION

¶33. This Court has examined the assignments of error and finds no merit to them. The conviction of David E. Crawford of the crime of capital rape and the sentence of life in prison are affirmed.

¶34. **CONVICTION OF CAPITAL RAPE AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**

1. Dr. Chidester was tendered by the State as "an expert in the field of medicine, particularly in the area of specialty in family practice." Defense counsel, following his voir dire of Dr. Chidester regarding her qualifications, stated "I can't accept her as anything but a general practice expert." Although the judge's ruling did not specify which he considered "so offered", it is logical to conclude that because the State "offered" Dr. Chidester as the expert, the judge accepted the State's definition of her expertise.