# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-KA-01686-SCT

*DAVID WELDE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/02/2007 |
| TRIAL JUDGE: | HON. PAUL S. FUNDERBURK |
| COURT FROM WHICH APPEALED: | ITAWAMBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BENJAMIN A. SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA H. TEDDER |
| DISTRICT ATTORNEY: | JOHN R.YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/19/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     David Welde was convicted in the Circuit Court of Itawamba County of one count of capital murder and one count of conspiracy to commit capital murder in the death of Donald Gilliard.  Following a jury trial, Welde was sentenced to life imprisonment without parole in the custody of the Mississippi Department of Corrections. Welde now appeals to this Court, asserting that the trial court erred in admitting evidence of Welde's alleged prior bad acts and also in denying Welde's motion for change of venue.  Finding no merit in these assignments of error, this Court affirms.

# FACTS

¶2. On December 30, 2004, David Welde, Charles Miles, and Helen Rogers went to Donald Gilliard's house to collect a debt. Gilliard owed Welde approximately one thousand dollars. An argument ensued among Welde, Miles, and Gilliard. Gilliard's wife, Dawnette Brown, testified that Miles, referring to Gilliard, stated "I'm going to kill you, one way or another." Welde, Miles, and Rogers then left.

¶3. The next morning at approximately 6:00 a.m., Welde went to the home of Michael Powers and Ashley Hughes, in an attempt to locate Powers, who also owed Welde money. Hughes refused to let Welde in, telling him that Powers was not home. Welde left and proceeded to Gilliard's house.

¶4. When Welde arrived at Gilliard's house at approximately 6:30 a.m., Gilliard's roommate, Doyle Higgins, answered the door. Welde suggested that Higgins go back to bed. When Higgins refused, Welde handed Higgins a .380-caliber bullet and said "You are a good man. You need to stay that way." Brown, Gilliard's wife, testified that while at the home, Gilliard asked Welde "Are y'all going to ambush me?" Welde responded "No. If I was going to ambush you, I would want you to see it coming." Welde stated that the two would "go to Huddle House and have some coffee and talk about it." Welde and Gilliard left in Welde's car.

¶5. Sometime between 7:00 and 7:30 a.m., Welde and Gilliard arrived at the home of Rogers to meet Miles, who was staying with Rogers at the time. Welde, Miles, and Gilliard quickly left in Miles's Chevrolet Lumina.

2

¶6. Welde, Miles, and Gilliard proceeded to the home of Powers and Hughes, looking for Powers. Believing only Gilliard was at the door, Hughes answered the door.[1] Welde barged in, and Hughes told him that Powers, who was hiding in the back of the home, was out of town. Welde stated that Powers owed him money and threatened to take things from the home if the debt remained unpaid. Hughes testified that Welde pulled a pistol from his jacket and stated "I was told to take this and put it to your forehead and pull the trigger." Welde then put the .380-caliber pistol to the couch and fired a round into the couch at approximately 8:00 a.m. Welde, Miles, and Gilliard left in Miles's Lumina, with Miles in the driver's seat, Gilliard in the passenger seat, and Welde in the back seat on the passenger side.

¶7. While the three traveled down the road, Miles pulled out a .25-caliber pistol and pointed it at Gilliard. Welde then handed Miles the .380-caliber pistol. Gilliard began to struggle with the two men. Welde grabbed Gilliard's arm, holding him while Miles shot Gilliard in the left side of the face. Miles handed the .380-caliber pistol back to Welde. Welde then shot Gilliard in the back of the head.[2] While still driving down the road, Miles leaned over and opened the passenger door. Welde let go of Gilliard, who immediately fell out the open door.

¶8. At 8:06 a.m., Welde called Lee Wayne Trammel and asked if he could come by Trammel's house. Welde and Miles arrived shortly thereafter, asking to use the restroom.

---

[1]Miles remained in the car while Welde and Gilliard went inside.

[2]Dr. Steven T. Hayne, who performed Gilliard's autopsy, testified that the cause of death was the second shot, fired by Welde into the back of Gilliard's neck.

3

Miles used a mop bucket and some water to try to clean the car. Trammel observed a large amount of blood on the car and inquired as to what happened. Welde admitted to shooting "a guy" who owed him money and showed Trammel the .380-caliber pistol. Trammel asked Welde and Miles to leave.

¶9.     Welde and Miles proceeded to the Tremont car wash where they attempted to clean the inside of the car with a pressure washer. In an attempt to dispose of evidence of the murder, Welde hid some bloody rags under a fifty-five gallon drum and threw some .380 casings over a fence behind the car wash. Welde and Miles went to the home of John Hawkins, asking him to dispose of both the murder weapon and their clothes.

¶10.     Jamie Lee Kent discovered Gilliard's body on Scott Senter Road at approximately 8:00 a.m. Brad Rogers, deputy with the Itawamba County Sheriff's Department, responded to the call and arrived on the scene at approximately 8:16 a.m.

## PROCEDURAL HISTORY

¶11.     David Welde and Charles Miles were indicted by a grand jury on May 12, 2006, on two counts: capital murder and conspiracy to commit murder. Following a four-day jury trial in the Circuit Court of Itawamba County, Welde was convicted on both counts on August 2, 2007. That same day, Welde was sentenced to life imprisonment without parole on the first count and twenty years imprisonment on the second count, to run consecutively. Welde now appeals, seeking a new trial.

## ANALYSIS

**I. Whether the court erred in admitting evidence of the defendant's acts prior to the murder.**

¶12.    Welde's first assignment of error concerns admission of the testimony of Hughes, who testified that on the morning of Gilliard's death, Welde threatened her with his pistol, and then shot the pistol into her couch.  Welde contends that this evidence of a prior bad act is irrelevant and inadmissible.

¶13.    "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence.  Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." *Fisher v. State*, 690 So. 2d 268, 274 (Miss. 1996) (citing *Shearer v. State*, 423 So. 2d 824, 826 (Miss. 1982)).

¶14.    Generally, evidence of any crime other than the one for which the defendant is being tried is not admissible.  *Ballenger v. State*, 667 So. 2d 1242, 1256 (Miss. 1995).  Mississippi Rule of Evidence 404(b) provides an exception to this general rule:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Miss. R. Evid. 404(b).  Evidence of other crimes, wrongs, or acts is admissible if the offense being tried and the other act are "so interrelated as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences." *Neal v. State*, 451 So. 2d 743, 759 (Miss. 1984).  This Court has held that when dealing with closely related acts,

5

the State "has a legitimate interest in telling a rational and coherent story of what happened . . . ." *Brown v. State*, 483 So. 2d 328, 329 (Miss. 1986).

¶15.    This Court has applied a two-part test to determine the admissibility of evidence under Rule 404(b). *Crawford v. State*, 754 So. 2d 1211 (Miss. 2000). "The evidence offered must (1) be relevant to prove a material issue other than the defendant's character; and (2) the probative value of the evidence must outweigh the prejudicial effect." *Id.* at 1220. The second part of this analysis is required by Mississippi Rule of Evidence 403, as "Rule 403 is an ultimate filter through which all otherwise admissible evidence must pass." *Id.* (quoting *Jenkins v. State*, 507 So. 2d 89, 93 (Miss. 1987)). Thus, evidence which passes the two-part test shall be deemed admissible under both Rule 404(b) and Rule 403.

¶16.    Hughes testified that on the morning of Gilliard's death, Welde and Gilliard came to her house, looking for her fiancé, Powers. After barging into the home, Welde informed Hughes that Powers owed him money, and that if Welde was not paid, he would return and take Hughes's possessions -- dvd player, stereo, etc. -- as compensation. Hughes testified that Welde then pulled out a .380-caliber pistol and said "You see this right here? I was told to put it to your forehead and pull the trigger." Hughes further testified that Welde then put the pistol to the couch and fired one shot into the couch.

¶17.    Itawamba County Chief Deputy Sheriff Steve Wilburn went to Hughes's home and recovered the projectile that had traveled through the couch and into the carpet underneath. The state's forensic expert, Byron McIntyre, matched this projectile and a projectile recovered from the passenger floorboard of the Lumina to the .380-caliber pistol identified as the murder

6

weapon. Several state witnesses testified that they saw Welde carrying a .380-caliber pistol on the morning of the killing. In his own statement to Mississippi Bureau of Investigation Investigator Chris Jones, Welde stated that he shot Gilliard in the back of the head with the .380-caliber pistol.

¶18. The trial court found that the events on the morning of Gilliard's death were "so interrelated with the incident involving the victim as to constitute a single transaction or occurrence." The court noted that these acts were material to prove knowledge, motive, intent, and planning on Welde's part. The trial court found that the events of that morning were closely related in time and place. The trial court admitted the evidence, finding that it was relevant and that the probative value of the evidence was not substantially outweighed by its prejudicial effect.

¶19. The evidence in this case clearly supports the trial court's finding that the challenged testimony was both relevant and probative. Hughes's testimony establishes that Welde and Gilliard were together less than half an hour before Gilliard's body was discovered.[3] Further, this evidence places the murder weapon in Welde's hands shortly before the shooting, as the projectile recovered from the couch matched the projectile recovered from the Lumina, both determined to have been fired by the .380-caliber pistol recovered by investigators.

---

[3]Powers, hiding in the bedroom, heard the gunshot in the living room at "approximately 8:00 a.m." Hughes did not testify as to the timing of the gunshot. Kent discovered the body at "approximately 8:00 a.m.," with Deputy Rogers arriving on the scene at 8:16 a.m.

¶20. The trial court properly employed the two-part analysis for admissibility under Rule 404(b) and the balancing test required by Rule 403. For the foregoing reasons, this Court finds that the trial court did not abuse its discretion in finding the evidence admissible.

**II. Whether the trial court erred in denying Welde's motion for change of venue.**

¶21. "The decision to grant or deny a motion for change of venue is within the discretion of the trial judge." *McCune v. State*, 989 So. 2d 310, 316 (Miss. 2008). "This Court 'will not disturb the ruling of the lower court where the trial judge did not *abuse his discretion* . . . .'" *Id.* (quoting *Mingo v. State*, 944 So. 2d 18, 30 (Miss. 2006)).

¶22. Upon filing an application for change of venue supported by two affidavits affirming the defendant's inability to receive a fair trial, there arises a presumption that an impartial jury cannot be obtained. *King v. State*, 960 So. 2d 413, 429-430 (Miss. 2007); *see also* Miss. Code Ann. § 99-15-35 (Rev. 2007). This Court has set forth "certain elements which, when present, would serve as an indicator to the trial court as to when the presumption is irrebuttable." *King*, 960 So. 2d at 429-430 (quoting *White v. State*, 495 So. 2d 1346, 1349 (Miss. 1986)). One such element is whether the case is a capital case, based on a heightened standard of review. *Id.* This Court has since held, however, that "[a] motion for a change of venue is not automatically granted in a capital case and is largely a matter within the sound discretion of the trial court." *Davis v. State*, 767 So. 2d 986, 993 (Miss. 2000) (citing *Gray v. State,* 728 So. 2d 36, 65 (Miss. 1998)).

¶23. The State may rebut the presumption that an impartial jury cannot be obtained "by proving from voir dire that the trial court impaneled an impartial jury." *Holland v. State*, 705

8

So. 2d 307, 336 (Miss. 1997) (citing **Harris v. State**, 537 So. 2d 1325, 1329 (Miss. 1989)). "If the State demonstrates such, this Court will not overturn the trial court's finding that an impartial jury could be found, despite adverse publicity." **Id.** Further, this Court has held that a circuit judge did not abuse his discretion in denying a motion for a change of venue when "during voir dire, numerous venire members indicated that they had read news accounts or had seen television newscasts regarding the case, and the only one who indicated that she had already formed an opinion as to how the case should be decided was excused." **McCune**, 989 So. 2d at 318.

¶24. In accordance with Mississippi Code Annotated Section 99-15-35, Welde filed an amended motion for change of venue. Attached were two affidavits from citizens who stated that Welde could not receive a fair and impartial trial in Itawamba County. The motion noted the "numerous" newspaper articles and television stories discussing the case, published prior to Welde's indictment, citing the circulation of the newspapers and the broadcast area of the television stations as reasons for the inability to obtain an impartial jury.

¶25. During the pretrial hearing, the state presented five witnesses, all members of the Itawamba County Board of Supervisors, each testifying that Welde could, in fact, receive a fair and impartial trial in Itawamba County. The court reserved ruling on the motion pending voir dire examination.

¶26. The venire was questioned as to whether they recalled any news media coverage regarding the case. Those prospective jurors who responded affirmatively were subjected to individual voir dire as to whether they had formed a fixed opinion based upon the coverage.

9

Only one prospective juror stated that he had formed a fixed opinion, and he was subsequently stricken for cause from the jury pool. In addition, during the state's voir dire questioning, each prospective juror agreed that the defendant would be presumed innocent until the evidence proved otherwise.

¶27.    After voir dire, the trial court instructed the prospective jurors that it was their duty to refrain from watching, reading, or listening to any news media coverage regarding the case. The jury was sequestered for the duration of the trial and sentencing.

¶28.    Through the pre-trial hearing and voir dire, the state presented evidence that an impartial jury could be obtained in Itawamba County. Moreover, the prospective jurors stated that they were, in fact, impartial and unaffected by media coverage of the case. "[T]his Court will treat with deference a venire person's assertions of impartiality." *Holland*, 705 So. 2d at 336 (citing *Scott v. Ball*, 595 So. 2d 848, 850 (Miss. 1992)).

¶29.    "Where . . . the evidence is conflicting on the question of whether or not the defendant could receive a fair and impartial trial, this Court will generally defer to the considered opinion of the trial judge." *Burrell v. State*, 613 So. 2d 1186, 1190 (Miss. 1993). There is no evidence in the record to indicate that the jurors were not fair and impartial. The trial judge took appropriate steps, through voir dire, jury instruction, and sequestration, to ensure that the defendant's right to a fair trial was preserved. This Court, therefore, finds that the trial court did not abuse its discretion in denying Welde's motion for change of venue.

**CONCLUSION**

¶30.   This Court finds that the trial court did not abuse its discretion in admitting evidence

of Welde's prior acts.  Further, this Court finds that the trial court did not abuse its discretion

in denying Welde's motion for change of venue.  For these reasons, this Court affirms the

judgment of the Circuit Court of Itawamba County.

¶31.   **COUNT I: CONVICTION OF CAPITAL MURDER AND SENTENCE  OF LIFE IMPRISONMENT, WITHOUT THE POSSIBILITY OF PAROLE, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF CONSPIRACY TO COMMIT MURDER AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED.  SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY WITH ANY SENTENCE PREVIOUSLY IMPOSED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, KITCHENS, CHANDLER AND PIERCE JJ., CONCUR.**