941 So.2d 865 (2006)
CITY OF NATCHEZ, Appellant
v.
Irma JACKSON and Husband, Melvin Jackson, Appellees.
No. 2005-CA-00043-COA.
Court of Appeals of Mississippi.
September 19, 2006.
Rehearing Denied November 3, 2006.
*868 L. Clark Hicks, Jr., attorney for appellant.
W. Bruce Lewis, William F. Riley, Natchez, attorneys for appellees.
Before KING, C.J., GRIFFIS and BARNES, JJ.
GRIFFIS, J., for the Court.
¶ 1. Irma and Melvin Jackson filed suit against the City of Natchez for Irma's personal injuries and Melvin's loss of consortium. After a bench trial, the Adams County Circuit Court entered judgment for the Jacksons. The city appeals and argues (1) there was no dangerous condition, (2) the trial court erred in admitting and excluding expert testimony, (3) the trial court erred in admitting medical records, (4) Irma was comparatively negligent, and (5) the damage award was not supported by the evidence. We find no error and affirm.

FACTS
¶ 2. Irma visited Copy Cats on Main Street in Natchez in order to have fliers printed. She was carrying her purse and papers in her hands. As she neared the door, about to enter the store, she fell. Her high heel got caught in a two-inch wide, six-inch deep hole.
¶ 3. The hole was a part of an old coal grate that the city had attempted to cover over with concrete. The reason was the city determined that the holes in the coal grate created a dangerous condition to pedestrians. The owner of Copy Cats, James Handjis testified that on four different occasions he had called the city, because the concrete was falling through the holes in the grate. Each time, the city patched the respective hole with more concrete. The Jacksons' concrete expert Henry White testified that concrete does not adhere to steel and this was the reason that the concrete plugs in the holes kept giving way. White also testified that it appeared the city had engaged in a core cutting in the area in question, which was further causing the strength of the concrete plugs to give way.

STANDARD OF REVIEW
¶ 4. In a claim based on the Mississippi Tort Claims Act, the trial judge sits as the finder of fact. Miss.Code Ann. § 11-46-13(1) (Rev.2002). "A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor, and his findings will not be reversed on appeal where they are supported by substantial, credible, and reasonable evidence." Donaldson v. Covington County, 846 So.2d 219, 222(¶ 11) (Miss. 2003). The circuit judge's findings of fact and conclusions of law will not be disturbed unless the judge abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Miss. Dep't of Transp. v. Trosclair, 851 So.2d 408, 413(¶ 11) (Miss.Ct. App.2003).

*869 ANALYSIS
I. Did the trial court err in finding a dangerous condition?
¶ 5. The city first argues that the judge erred in finding a dangerous condition, because holes in sidewalks are not dangerous conditions for which municipalities may be held liable. The Jacksons respond that the coal grate was placed there by the city and was negligently repaired by the city. The Jacksons further argue that the city violated its own city code by failing to adequately secure the opening.
¶ 6. To state a cause of action under the dangerous condition exemption of the Mississippi Tort Claims Act, a plaintiff must show: (1) a dangerous condition, (2) on the government entity's property, (3) which the government entity caused, or of which it had notice and time to protect or warn against, and, (4) in the case of a failure to warn, the condition was not open and obvious. Miss.Code Ann. § 11-46-9(1)(v) (Rev.2002). See City of Jackson v. Internal Engine Parts Group, Inc., 903 So.2d 60, 64(¶ 11) (Miss.2005). The city argues that holes and cracks in sidewalks are not dangerous conditions for which municipalities may be held liable. Indeed we have refused to impose liability for naturally occurring defects in sidewalks. Burton v. City of Philadelphia, 595 So.2d 1279, 1280 (Miss.1991). However, the supreme court has distinguished between defects caused by nature and those caused by the government. Id.; Lancaster v. City of Clarksdale, 339 So.2d 1359, 1360 (Miss.1976); City of Ruleville v. Grittman, 250 Miss. 842, 845-46, 168 So.2d 527, 529 (1964). Where the defect is caused by the city, we are much more prone to hold it is a triable issue as to whether the city was negligent. Lancaster, 339 So.2d at 1360.
¶ 7. For example, in Grittman, 250 Miss. at 843, 168 So.2d at 528, the court upheld a verdict for a pedestrian who fell when her shoe was caught in a steel wire wicket the city had embedded in the sidewalk and left exposed. A ditch had been excavated for the purpose of installing sewer lines. Id. at 844, 168 So.2d at 528. Then, "[t]he ditch . . . was filled in part with broken pieces of concrete, one of which had attached a piece of steel wire reinforcement." Id. When the surface was resealed with concrete, the steel wire remained exposed. Id. "About four days before plaintiff sustained said injuries she noticed the wicket and intended to notify the authorities when she arrived at work but forgot to do so." Id. at 845, 168 So.2d at 528. Later, her foot caught in the wicket causing her to fall and sustain serious injuries. Id. at 845, 168 So.2d at 529. The court held that since the defect was caused by the City of Ruleville, it was a question for the jury as to whether the city was negligent. Id. at 846, 168 So.2d at 529. The court went on to hold the jury was justified in finding it was a dangerous condition. Id. at 847, 168 So.2d at 530.
¶ 8. Likewise, the undisputed evidence here was that the hole was caused by the affirmative act of the City of Natchez. The city placed the coal grate in the middle of the sidewalk on Main Street. The steel grate was full of holes. Even though the city tried to cover the holes up, it left at least one hole exposed. Thus, it was a question for the trier of fact as to whether the city was negligent.
¶ 9. The trial court found the coal grate did create a dangerous condition. We must affirm this holding so long as there is substantial, credible evidence to support it. Donaldson, 846 So.2d at 222(¶ 11). Handjis testified that the hole created an unreasonable trip hazard for his customers, many of whom wear high heels and enter *870 and exit the store with their hands full. The city's director of public works Richard Burkes admitted that the holes in the coal grate created an unreasonable trip hazard. He testified this was why the city previously attempted to cover the holes altogether. He also testified, that the coal grate was a dangerous condition according to the city code "so long as it was not so secure as to prevent accidents to persons passing over them." Natchez Code, Art. III, § 26-41. On this record, we hold the judge was justified in finding the hole in the coal grate was a dangerous condition. Not only did the city affirmatively cause the defect, there was evidence, including an admission, that this was a dangerous, unreasonable trip hazard.
II. Did the trial court err in admitting and excluding expert opinions?
¶ 10. The city next claims that the trial judge should not have allowed White to render an expert opinion on whether the grate was negligently repaired or dangerous. In the alternative, the city asserts that the court should have allowed Thomas Horn to render an expert opinion on whether the hole was dangerous.
¶ 11. The admissibility of evidence rests within the trial court's discretion. Crawford v. State, 754 So.2d 1211, 1215(¶ 7) (Miss.2000) (overruled on other grounds). Unless her judicial discretion is abused, this Court will not reverse her ruling. Id. The qualifications of an expert in the fields of scientific knowledge are left to the sound discretion of the trial judge. Id. Her determination on this issue will not be reversed unless it clearly appears that the witness is not qualified. Id.
A. Did the trial court err in accepting White's expert opinions?
¶ 12. While the city concedes White's qualifications to testify as an expert on concrete construction, repairs and characteristics, it argues that any such testimony was irrelevant. The city also argues that White's testimony regarding the hole posing a danger was not helpful to the trier of fact and not based on any tests. The Jacksons respond that his testimony was relevant to a central issue in the case and his opinions were properly admitted.
¶ 13. First, we address the issue of relevancy. "Evidence which is not relevant is not admissible." M.R.E. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. The pretrial order established that one of the issues to be tried was whether or not the city had "improperly repaired the coal grate/sidewalk on numerous occasions before the fall." White testified that the city's active repair and maintenance of the grate were causing the holes to keep reappearing. First, he testified that concrete does not adhere to steel. White also testified that the city was engaged in core drilling of the grate and sidewalk in question, which weakens the strength and structure of the concrete covering the coal grate. Finally, he testified that a more structurally secure resolution to the problem would be to remove the coal grate altogether and then fill in the space with concrete. This testimony tends to make the fact that the city negligently repaired and maintained the grate and sidewalk in question more probable than it would be without this evidence. Therefore, it was relevant and properly admitted.
¶ 14. Next, we consider whether White's opinion that there was a dangerous condition should have been excluded. The city says the opinion does not require special skill, and that if it does *871 White does not have that special skill, nor did he base his opinion on any tests. In particular, the city takes issue with White's position as a union man and his inability to speak the King's English. However, the city did not object to this opinion at trial. The closest the city came was several questions later when White was asked if he had an opinion as to whether the area in question conformed with the city's code. The only objection offered then was relevancy. Error may not be predicated upon a ruling admitting evidence unless there is a timely objection. M.R.E. 103(a)(1). A party must state the specific grounds for objection, unless the grounds are apparent from the context. Id. If the objection on appeal differs from the objection at trial, the issue is not properly preserved for appellate review. Belmont Homes, Inc. v. Stewart, 792 So.2d 229, 239(¶ 45) (Miss.2001). Such failure waives objection to expert or opinion evidence and to an objection that the opinion states a legal conclusion. Miss. Baptist Found., Inc. v. Estate of Matthews, 791 So.2d 213, 217-18(¶ 16) (Miss.2001).
B. Did the trial court err by excluding Horn as an expert on dangerous conditions?
¶ 15. The city argues that Horn was qualified to testify as to whether the hole was dangerous and as to whether the city caused the hole based on his experience as a municipal risk manager. The Jacksons respond that his testimony was irrelevant, because the issue was negligent repair. They also say that he was not qualified to give the opinion, and his proffered opinions were not supported by facts or data.
¶ 16. Horn's proffered testimony was for three opinions: (1) the hole was not dangerous, (2) it was open and obvious, and (3) it was not caused by the city. The trial court did not accept him as an expert:
because the Court do[es] not see anything in his qualifications or his testimony that the Court believes that would make him an expert. There was no special training. For the mere fact that he has held that position as Risk Manager and Director for fifteen years does not make one an expert on whether or not this sidewalk is dangerous. I would think it would take an engineer or somebody, or something to look at this and say, you know, somebody could fall here, or could not fall here. For that reason the Court do[es] not accept him as an expert.
On appeal, the city does not argue that Horn was qualified to testify as to what is open and obvious.
¶ 17. As for his opinion on causation, this was inadmissible. His expert designation did not list this as part of his proffered testimony. An expert opinion that was not set out in the expert's designation, will be excluded unless the designation gave fair notice of that opinion. Peterson v. Ladner, 785 So.2d 290, 295(¶ 19) (Miss.Ct.App.2000). Horn's designation stated only that he would give an opinion that the hole was not dangerous and was open and obvious. This does not give fair notice as to his opinion on causation. Additionally, he admitted that he had no expertise in concrete maintenance and repairs, so he was unqualified to testify as to whether the city's activities did or did not cause the defect.
¶ 18. As for the remaining opinion on whether the hole was dangerous, he was designated to give this opinion. The question remains whether he was qualified.
¶ 19. "The test is whether the witness `possesses peculiar knowledge or information regarding the relevant subject *872 matter which is not likely to be possessed by a layman.'" Nunnally v. R.J. Reynolds Tobacco Co., 869 So.2d 373, 384(¶ 36) (Miss.2004). During direct, counsel for the city asked Horn if any of the classes he took included "municipalities in sidewalk safety." Horn explained that it only dealt with work zone safety. When asked how his experience as city Risk Manager related to sidewalk safety, he replied that he would receive a call that there was an accident, he would investigate, put up a barricade, call Public Works to come fix any defect, and leave once Public Works arrived. He would also prioritize the work orders he handed to Public Works. During cross-examination, Horn said that it does not take any expertise to do this. He also testified that he was not qualified as an expert in concrete repairs. Based on his voir dire, we cannot say the judge abused her discretion in determining that Horn was not qualified to opine whether or not the hole was dangerous. He did not indicate a peculiar knowledge above that of the average, randomly selected adult that would give him a better understanding of whether or not this hole was dangerous.
¶ 20. On appeal, the city concedes that it does not take any expertise to say whether or not the hole in question constituted a possible danger. Nevertheless, they insist that Horn should have been allowed to give this testimony, because White was allowed to opine as to whether there was a dangerous condition. As previously set out, the city never objected to White's opinion, let alone on the basis that he was unqualified to give it. This issue has no merit.
III. Did the trial court err in admitting medical records?
¶ 21. The city next complains that the trial court should not have admitted Irma's medical records into evidence, because there was no sponsoring witness to authenticate the documents. The Jacksons respond that the city stipulated to the admissibility and authenticity of these records and that some of the records were in fact authenticated by Dr. Robert B. Haimson.
¶ 22. The admissibility of evidence rests within the trial court's discretion. Crawford, 754 So.2d at 1215(¶ 7). Unless her judicial discretion is abused, this Court will not reverse her ruling. Id. "For a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely effect a substantial right of the party." Crane Co. v. Kitzinger, 860 So.2d 1196, 1199(¶ 9) (Miss.2003) (quoting Terrain Enters., Inc. v. Mockbee, 654 So.2d 1122, 1131 (Miss. 1995)).
[Error] is prejudicial, and grounds for reversal, only when it effects the final result of the case and works adversely to a substantial right of the party assigning it. Obviously, in order for the rule of harmless error to be called into play in support of a judgment, the judgment must be otherwise supportable. . . .
Catholic Diocese of Natchez-Jackson v. Jaquith, 224 So.2d 216, 221 (Miss.1969). Where a party stipulates to the admissibility of medical records, that party cannot later complain about their introduction and consequential prejudicial effect. Meena v. Wilburn, 603 So.2d 866, 871 (Miss.1992).
¶ 23. The pretrial order listed certain medical bills and records that Irma would offer at trial:
Natchez Community Hospital ER (bill & records)
ER Physician (bill)
Radiology Associates (bill)
Dr. Robert Haimson (bill and records)

*873 Natchez Regional (bone scan) (bill and records)
Open Air MRI (back) (bill and records)
Open Air MRI (shoulder) (bill and records)
Pain Management (bill and records)
Key Rehab (bill and records)
Dr. Scott Wolfe (bill and records)
Wal-Mart Pharmacy (bill)
Wilson-Holder Drug (bill)
Walgreens (bill)
The order stated that, "Each exhibit has been marked for identification and examined by all counsel." It also contained a stipulation, "The authenticity and admissibility in evidence of these exhibits has been stipulated. If the authenticity and/or admissibility of any exhibit is objected to, the exhibit must be identified in the following space, together with a statement of the specific ground or grounds for the objection." In the required space appeared the following objection, "Defendant objects to any medical bills and records not listed in Plaintiff's Summary of Charges contained in Paragraph 7 of this pretrial order." The medical providers listed in Paragraph 7 of the pretrial order matched those listed above.
¶ 24. At trial, counsel for the Jacksons proceeded to have Irma testify about her medical bills. The city stipulated that the summary of her medical records could come into evidence, and that had Irma testified, she would say she incurred those bills as a result of the fall. The summary was marked as Exhibit 2. Then counsel for the Jacksons attempted to introduce the medical records into evidence:
BY MR. LEWIS: Your Honor, at this time we offer the medical records to support the medical bills that have been marked, and they were identified in Paragraph 11, in the Pretrial Order. There is [sic] medical records of each one of the medical providers that has now been stipulated into evidence.
BY THE COURT: The Court will accept that that will be Exhibit 2. It's a composite exhibit. After you mark that, you can pass it up here.
BY MR. LEWIS: The summaries were the stipulated exhibit. So, that will be Exhibit 2.
BY THE COURT: There is [sic] medical records from Natchez Community Hospital that were sent to the clerk.
BY MR. LEWIS: Your Honor, I think they are here already. That's the very first group of documents that's offered here.
BY THE COURT: Okay, then put this one back in the file.
BY MR. J. MCCOY [the city's attorney]: We have an objection to the medical records going in because they weren't identified in the pretrial order and we don't know if what this packetI have not looked through this packet, but they do appear to contain some records, some writing, it could contain hearsay, we don't know what this contains, but it wasn't in the pretrial order. We have already stipulated to what was in the pretrial order, we have stipulated that, but we object to these records going into evidence on the grounds of hearsay, and they weren't contained in the Pretrial Order as part of it.
BY MR. RILEY [the Jacksons' attorney]: May I answer that?
BY THE COURT: Yes, sir.
BY MR. RILEY: In the pretrial order on page six, everyone [sic] of the bills and records are listed. Now, with regard to the hearsay argument, all hospital records contain hearsay; but it has to go to the business records of the hospital. It's admissible to show *874 what was done at the hospital's location. You can't extract the hearsay, it's a part of the records. Not only that, we sent copies of these to Counsel.
BY MR. LEWIS: We'd be glad to let him have the opportunity to examine them if he'd like to, to see if they had been presented to him.
BY MR. J. MCCOY: Your Honor, in Paragraph 11 of the pretrial order, it says each exhibit has been marked for identification and examined by all Counsel. They did not mark them for identification. As a matter of fact, what he's trying to offer into evidence, as the Court can see, has no marking on it whatsoever on it. It has not been marked for identification. They may haveI can't tell the Court whether or not they furnished us copies of those. They have furnished us copies of some medical records, but I don't know that that packet that Counsel is attempting to offer into evidence at this trial contains those.
BY MR. RILEY: Your Honor, we would be glad to introduce proof where we did send it to him.
BY THE COURT: We can take a break and let him view those to see if he has them. So we'll take a fifteen minute break.
. . . .
BY THE COURT: Mr. McCoy, did you have an opportunity to
BY MR. MCCOY: Yes, Your Honor.
BY THE COURT: Is it everything?
BY MR. J. MCCOY: Are we back on the record?
BY THE COURT: Yes, we can go back on the record.
BY MR. J. MCCOY: For the record, Your Honor, we would like to rely on objections to these hospital records going into evidence that we stated in the pretrial order in Paragraph 11. That is that they were not marked for identification and given to us to be examined prior to trial. I attempted to examine them here in the Courtroom and I cannot do so because they are not in the same order that we have the medical records that were furnished to us. There is just no way I can know if these are the same. As you can see, it's a thick pack of records and there is no way that I can know that I have seen these records. Still the main objection is that it wasn'tin Paragraph 11 of the pretrial order it requires each exhibit to be marked for identification and examined by all Counsel. I can state to the Court that we were not given the opportunity tothat this exhibit was not marked, there is no marking on it anywhere, and it has not been examined and for that reason we object to it going into evidence.
BY THE COURT: The objection is overruled, the Court will allow them to be marked as an exhibit. . . . three.
BY MR. LEWIS: Your Honor, we'd like the record to reflect that the Summary on Exhibit 2 is numbered 1-13, and the task [sic] on Exhibit 3 correspond with Exhibit 2.
¶ 25. From this record, we see that there is no question that the city had stipulated to the records that were listed in the pretrial order. The only objection is that the records introduced were not marked, and the city could not tell whether or not these were the same records stipulated. The city was given an opportunity to review the records to make specific objections in case the records were not what they had stipulated. After doing so, the city was unable to say if any of the records had not been previously produced. *875 This may be one thing, but on appeal, the city still is unable to say if any of the records in Exhibit 3 were not in fact stipulated.
¶ 26. The records were from Natchez Community Hospital, Dr. Haimson, Open Air MRI, Natchez Regional, University Medical CenterPain Management, Key Rehab Associates, Inc., and Dr. Scott Wolfe. These were produced in the same order as they were listed in Paragraphs 7 and 11 of the pretrial order. On this record, we cannot tell that any records went in to evidence without its authenticity and admissibility stipulated.
¶ 27. Even were we to find this was error, we see no resulting prejudice in this case. Dr. Haimson did authenticate the medical records that came from his office. He also testified that Irma's injuries were caused by and consistent with the fall. He testified that Irma's medical bills were reasonably and necessarily incurred. Both sides stipulated that Irma also would testify that she saw these same medical providers and incurred charges because of the injuries received from the fall. Finally, Dr. Haimson's testimony corroborated the dates and types of injuries Irma was experiencing. We affirm.
IV. Should the trial court have assessed comparative fault?
¶ 28. The city argues that the trial court should have assessed comparative fault to Irma because the hole was open and obvious. The Jacksons argue that the court found the hole was not open and obvious.
¶ 29. One of the reasons the trial judge found the area to be a dangerous condition was that it was camouflaged by the city. Specifically, she found, "That the city maintains the sidewalk, and it is the city who chose to cover the grate of [sic] the concrete. If they had not . . . covered it with concrete, then one withespecially a person with any kind of shoes with a heel on it would pay attention." The court found it was not open and obvious, because:
nobody walks around looking down at the sidewalk. When I walk I look up the street. Open and obvious is viewing what's there now in those pictures with that big orange barrel sitting there, I would see that and know I'd need to look down, but other than that I'm walking down the sidewalk, I'm not looking down to see if there are little holes in the middle of the sidewalk that's going to catch a heel.
¶ 30. There was sufficient evidence to support a finding that the hole was not open and obvious. There were six pictures of the patched grate, bates numbered 1-6. On pictures 1 and 6, the orange barrel covers up the hole. In pictures 4 and 5, the barrel is placed on the grate right beside the hole. Finally, in the two remaining pictures, 2 and 3, the barrel is placed off the grate altogether. Pictures 2-5 were from close range. The hole is much more apparent in the pictures where the barrel is placed right beside it, because the barrel covers up the rest of the grate. In the pictures with the barrel off the grate, the hole is less apparent. There are at least two other black circular spots on the grate. We assume these are merely spots and not holes, because they appear to be so and there was no evidence that there were any other exposed holes on the grate in question. These make the hole less apparent, because it appears to also be merely a two dimensional spot, rather than a three dimensional hole. The judge had all these pictures before her and a chance to evaluate them. We cannot say the judge was in error in trying to place these pictures in context of how they appeared at the time of the accident, i.e., *876 without the orange barrel and from the perspective of a pedestrian. That was her job as finder of fact, and there was evidence to support her finding.
¶ 31. The testimony also supported the finding that the defect was not open and obvious. It was a two inch diameter hole placed in front of the entrance to a copy store, where testimony was that customers often travel in and out of store carrying papers and boxes. The testimony was also that many of those customers wear high heels. "Members of the public using sidewalks are not under a duty to single-mindedly be on the alert at all times to avoid possible obstructions that have been placed there by the city officials and their agents." Lancaster, 339 So.2d at 1360. This is especially true in this case where the defect was in front of the door to the store. It is not reasonable to expect a pedestrian to keep her eyes on the ground, and risk being hit by a suddenly opened door, or running into another pedestrian. She was only required to keep a reasonable lookout under the circumstances. It was reasonable for her to divert her attention from the sidewalk and place it on the door that she was seconds away from entering.
¶ 32. Nevertheless, the city argues that Mayfield v. The Hairbender, 903 So.2d 733 (Miss.2005) mandates that a plaintiff be assessed with comparative fault when the defect was open and obvious. Mayfield does not apply to this case. In Mayfield, that the defect was open and obvious was not disputed. 903 So.2d at 736 (¶¶ 13-14). In the instant case, the issue was disputed. The trial judge found the defect was not open and obvious and there was substantial credible evidence to support this finding.
¶ 33. While both parties concede that "open and obvious" is not a complete bar to recovery in this case, we recognize that it is a complete bar in a Tort Claims Act case for the failure to warn of a dangerous condition. City of Jackson, 903 So.2d at 64(¶ 11). It is not a bar to recovery when the issue is the government's negligent maintenance or repair which led to the dangerous condition. Id. This case likewise presented questions of affirmative acts of negligence by the city as well as negligent maintenance and repair. This distinction aside, there was no open and obvious defect in this case. We affirm.
V. Was there evidence to support the damage award?
¶ 34. In its final argument, the city maintains that the damage award is unsupported by the evidence. They do not appeal the damages awarded to Melvin for loss of consortium. They appeal Irma's $219,183.67 damage award. The city says Irma had nothing but soft tissue injuries which did not even require surgery. The Jacksons state that surgery was recommended but was not an option for Irma because of a heart condition.
¶ 35. We must determine whether the monetary damages awarded were proved to a reasonable certainty and not based merely on speculation or conjecture. Fred's Stores of Tenn., Inc. v. Brown ex rel. Brown, 829 So.2d 1261, 1263(¶ 10) (Miss.Ct.App.2002).
There is at times some necessary measure of speculation when a fact-finder sets an amount of damages to award. In such cases, it is the plaintiff's duty to lay enough of a foundation in evidence to assist the trier of fact to make a fair and reasonable decision. When a trial judge sits without a jury, an appellate court must review the record and accept all evidence that would reasonably support the judgment, together with any reasonable *877 inferences that could be drawn from them.
Id. (citations omitted). "It is primarily the province of the [fact-finder] to determine the amount of damages to be awarded and the award will not normally be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." Lewis v. Hiatt, 683 So.2d 937, 941 (Miss.1996). The amount of the physical injury, mental and physical pain, present and future, temporary and permanent disability, medical expenses, loss of wages and wage-earning capacity, sex, age and health of the injured plaintiff, are all variables to be considered by the fact-finder in determining the amount of damages to be awarded. Woods v. Nichols, 416 So.2d 659, 671 (Miss.1982). Each case must be decided on its own facts. Id.
¶ 36. The judge awarded Irma $219,183.67 in damages. The judge found that $19,183.67 of this was for past medical expenses. This was supported by evidence at trial that Irma reasonably and necessarily sustained $19,183.67 in past medical bills due to this accident. Irma, her husband, and her doctor testified to her other damages as well. Because of the fall, she has sciatica radiating from her back to her left leg. Her left leg goes suddenly numb and causes her to fall. She also injured her elbow and shoulder and left ankle in the fall. She is not a candidate for surgery because of her pre-existing heart condition. She will continue to live with the pain. She no longer can cook, clean, or bathe herself. She is no longer able to attend her son's school functions or help with his homework. She is unable to decorate for Christmas, attend family functions, help or travel with her husband's ministry. She is depressed. She and her husband used to be affectionate and active together. As a result of the accident, they no longer can be physically intimate with one another, because the pain is too great. On this record, we cannot say that the award of damages was so unreasonable as to shock the conscience of the court. We affirm.
¶ 37. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.