991 So.2d 1223 (2008)
James Michael PULIDO a/k/a Michael James Pulido, Appellant
v.
CITY OF OXFORD, Mississippi, Appellee.
No. 2006-KM-01277-COA.
Court of Appeals of Mississippi.
January 22, 2008.
Rehearing Denied July 22, 2008.
Certiorari Denied October 9, 2008.
*1224 Jason Lee Shelton, attorney for appellant.
Bela J. Chain, Oxford, attorney for appellee.
Before KING, C.J., BARNES and ISHEE, JJ.
KING, C.J., for the Court.
¶ 1. Michael James Pulido was convicted of careless driving and driving under the influence in the Municipal Court of Oxford, Mississippi. He appealed these convictions to the Circuit Court of Lafayette County, Mississippi, which affirmed the convictions. Pulido appeals this decision, as well as the circuit court's denial of his JNOV motion, and motion for a new trial, raising the following issues: (1) whether the Lafayette County Circuit Court erred in finding it had jurisdiction to hear the appeal from the Oxford Municipal Court; (2) whether the circuit court erred in finding there was an adequate evidentiary foundation for Officer Libby Lytle's testimony; and (3) whether the circuit court erred in failing to allow inquiry into whether the sobriety testing equipment was properly calibrated and functioning at the time of Pulido's arrest. Finding no reversible error in the trial court's decision, we affirm.

FACTS
¶ 2. On the night of November 14, 2004, Oxford Police Officer Libby Lytle observed Pulido weaving in and out of the driving lanes on Jackson Avenue in Oxford, Mississippi. Officer Lytle testified that she stopped Pulido's truck. Upon reaching the truck, she observed Pulido's "bloodshot glassy, dilated pupils," and noted his slurred speech. Officer Lytle testified that she perceived the strong odor of an intoxicating beverage coming from inside of Pulido's truck.
¶ 3. Officer Lytle asked Pulido to get out of the truck. Office Lytle observed that Pulido lacked balance getting out of his elevated truck. Officer Lytle then conducted three field sobriety tests  the horizontal gaze nystagmus test, the one-legged stand test, and the walk and turn test. Officer Lytle testified that Pulido was only able to complete three of the eight assigned tasks in the walk and turn test and thus failed that test. Officer Lytle testified that it appeared that Pulido might injure himself during the one-legged stand and therefore she stopped in the middle of that test. However, he completed only one of the four tasks given in this test.
¶ 4. At this point, Officer Lytle believed that Pulido was intoxicated and placed him under arrest. She took Pulido to the Lafayette County Detention Center to take an Intoxilyzer test. While in route, Pulido *1225 indicated his refusal to take the Intoxilyzer test and, at the detention center, he again refused the test. Pulido was convicted of driving under the influence and careless driving in the municipal court. He appealed this conviction to the Lafayette County Circuit Court. The circuit court found Pulido guilty of driving under the influence, first offense, and careless driving. He has timely appealed that conviction.

I. Whether the Lafayette County Circuit Court erred in finding that it had jurisdiction to hear the appeal from the Oxford Municipal Court.
¶ 5. Pulido argues that the failure of the Oxford Municipal Court to comply with Rule 12.02 of the Uniform Rules of Circuit and County Court deprived the Lafayette County Circuit Court of jurisdiction to hear his appeal. The relevant portion of Rule 12.02 provides:
It shall be the duty of the judge from whose judgment the appeal is taken to deliver to the clerk of the circuit court, within 10 days after the appeal bond and cost bond, as required herein, are given and approved, a certified copy of the record in the case with all of the original papers in the case.
URCCC Rule 12.02(A).
¶ 6. Pulido filed his notice of appeal on February 24, 2005. A copy of the record was not filed with the circuit court until October 20, 2005. Beyond question, this filing is not in compliance with Rule 12.02. The record before this Court offers no explanation for that failure.
¶ 7. The timely notice of appeal by the appellant is jurisdictional, and the failure to give that notice in a timely manner does in fact deny jurisdiction to the appellate court. In re Estate of Ware, 573 So.2d 773, 774 (Miss.1990); Byrd v. Biloxi Reg'l Med. Ctr., 722 So.2d 166, 168(¶ 10) (Miss.Ct.App.1998). However, the purely ministerial act of transmission of the record is not jurisdictional. Even if this Court were to find that act to be jurisdictional, the required result would be to dismiss the appeal for lack of jurisdiction, and thereby let stand the conviction and sentence of the municipal court. Such a tortured result would only punish the would-be appellant and not the party who failed to comply with the rules.
¶ 8. Pulido also argues that when the abstracts of the court record were provided by the municipal court, they were so inaccurate and flawed that the circuit court was deprived of proper jurisdiction of the case. The record sent from the municipal court included a copy of Pulido's 2002 DUI charge, which had been dismissed by Circuit Court Judge Howorth a few months before he heard the appeal of the 2004 DUI charge.
¶ 9. The inadvertent inclusion of extraneous matters in the record likewise does not raise an issue of jurisdiction. At best, such an inclusion might raise a question of possible prejudice. However, Judge Andrew Howorth noted that the documents related to each charge were readily distinguishable, and we find the inclusion of the extra material was therefore without prejudice.

II. Whether the circuit court erred in finding there was an adequate evidentiary foundation for Officer Lytle's testimony.
¶ 10. Pulido argues that Officer Lytle's testimony regarding the field sobriety tests should have been stricken because there was no evidentiary foundation laid that she was qualified to administer such tests or competent to analyze the tests results. He also argues that Officer Lytle's statement that he was "definitely intoxicated" was a scientific conclusion and *1226 should have been excluded as impermissible expert testimony.
¶ 11. Under Rule 702 of the Mississippi Rules of Evidence, expert testimony, whether fact or opinion, "requires scientific, technical, or other specialized knowledge beyond a randomly selected adult." Palmer v. Volkswagen of Am., Inc., 904 So.2d 1077, 1092(¶ 64) (Miss.2005). However, Rule 701 provides that lay witnesses may testify about opinions as long as the inferences are "(a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of 702." M.R.E. 702.
¶ 12. This Court has previously allowed police officers, not designated as experts, to offer their opinions of whether a suspect was under the influence. In Christian v. State, 859 So.2d 1068, 1071(¶ 8) (Miss.Ct. App.2003), the defendant refused the Intoxilyzer test in jail. The police officers, however, were able to testify that they smelled an "odor of alcohol coming from the vehicle," as well as witnessed the defendant's "belligerent and threatening behavior towards himself and other officers at the jail." Id. The Court held that, under Rule 701 of the Mississippi Rules of Evidence, the officers could testify about their personal observations of the defendant and they did not have to be tendered as experts to testify. Id. at (¶ 10). The officers were even allowed to testify as to the ultimate issues of the case, as long as the opinions or inferences were otherwise admissible. Id.
¶ 13. In Graves v. State, 761 So.2d 950, 955(¶ 12) (Miss.Ct.App.2000), this Court held:
Field sobriety tests, including the only permissible use of the HGN test, rely upon common experiences to develop an opinion whether a person is intoxicated or not. These tests are based upon coordination and the ability to concentrate, with simple exercises such as reciting alphabet, walking, or standing on one leg. These tests only require the officer to observe the actions of the person or whether he was slurring, stumbling, or staggering and testify to them in court. Accordingly, an officer should not have to be rendered an expert to give opinion testimony regarding the administration of these common sense tests.
¶ 14. Officer Lytle administered three field sobriety tests  the walk and turn, the one-legged stand, and the horizontal glaze nystagmas tests (HGN). She testified about the results of the walk and turn and the one-legged stand tests only, avoiding testimony on the HGN test as a result of Young v. City of Brookhaven, 693 So.2d 1355, 1360-61 (Miss.1997) (limiting use of HGN tests results to only serve as probable cause to arrest and administer Intoxilyzer or blood tests).
¶ 15. As to the walk and turn test, Officer Lytle testified that she first explained and demonstrated the test to Pulido. She asked him if he had any questions and then she directed him to begin the test.
PROSECUTOR: Can you tell us whether or not you demonstrated that [walk and turn] test to Mr. Pulido.
OFFICER LYTLE: Basically what I had him do was stand on the line with his right foot in front of his left and stand in that position until I asked him to do the test. He was not able to stand there during the instruction[s]. I had to ask him to get back in the position. At that point in time I demonstrated the test to him, told him to walk nine steps down the line touching heel to toe on each and every *1227 step, keeping his hand down to his side and count out loud each step. When he gets to the turn around and come back touching heel to toe for nine steps and do not stop until he has completed.
¶ 16. Officer Lytle further testified that she looked for a specific number of things Pulido was supposed to accomplish during the test. Pulido indicated five clues of impairment on the test, out of a total of eight clues.
¶ 17. Next, Officer Lytle testified about the one-legged stand test.
PROSECUTOR: Describe[ the one-legged stand] test for the court.
OFFICER LYTLE: Basically [ ... I ask him to get] in position with his hands down at his side, his feet close together, raise whatever foot he wants, six inches off the ground with his toes pointed out. [I][m]aintain the individual on his toes, [and I] want him to count out loud from 1001, 1002 so forth and so on until I tell him to stop. At that point in time he started doing the test and he used his arms for balance throughout the test. He put his foot down at 3 and 6 and against at 8 and I stopped the test when he almost fell over and he was swaying during the test as well.
¶ 18. Officer Lytle testified that Pulido got three out of the four clues wrong on the test. Each of the tests administered by Officer Lytle, consistent with this Court's holding in Graves, relied upon her observation and did not require qualification as an expert.
¶ 19. Trial courts exercise sound discretion over the admissibility of testimony. City of Natchez v. Jackson, 941 So.2d 865, 870(¶ 11) (Miss.Ct.App.2006). There must be prejudice or harm or an adverse affect of a substantial right of a party before this Court will reverse a case based on the admission or exclusion of evidence. Palmer, 904 So.2d at 1091(¶ 65). This Court does not find that the trial court erred in admitting Officer Lytle's testimony of the field sobriety test results. This issue is without merit.
¶ 20. As an additional point of error, Pulido argues that Officer Lytle should not have been able to offer her opinion on his tests performance because he had recently undergone surgery, thus, he would not have performed the same on the tests as a regular, healthy person. In Wright v. City of Water Valley, 832 So.2d 1241, 1244(¶ 8) (Miss.Ct.App.2002), this Court held that the law does not require a police officer to ask a suspect about any medical impairments that would prevent the person from performing the field sobriety test. Likewise, this argument is also without merit.
¶ 21. Finally, Pulido asserts that he was prejudiced by his refusal to submit to the Intoxilyzer test. There is no evidence in this record to support this assertion. The trial judge found, separate and apart from Pulido's refusal to take the Intoxilyzer test, that the evidence established his impairment. This argument is without merit.

III. Whether the circuit court erred in failing to allow inquiry into whether the sobriety testing equipment was properly calibrated and functioning at the time of Pulido's arrest.
¶ 22. Pulido asserts that the circuit court erred by not allowing him to question Officer Lytle regarding whether the Intoxilyzer test she would have used was properly calibrated and functioning at the time of Pulido's arrest. Because no Intoxilyzer test was given, and no Intoxilyzer test results were offered to establish Pulido's guilt, the question of whether the *1228 machine was properly calibrated was irrelevant. The trial court has discretion over the admissibility and relevancy of evidence, and absent an abuse of that discretion, this Court will not disturb that decision. Towner v. State, 837 So.2d 221, 226(¶ 13) (Miss.Ct.App.2003). We find no error in the trial court's decision and this issue is without merit.
¶ 23. THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT OF CONVICTION OF CARELESS DRIVING AND DRIVING UNDER THE INFLUENCE, FIRST OFFENSE, AND FINE OF $59 FOR CARELESS DRIVING AND $1,000 FOR DRIVING UNDER THE INFLUENCE, FIRST OFFENSE, AND SENTENCE TO SERVE FORTY-EIGHT HOURS IN THE LAFAYETTE COUNTY DETENTION CENTER IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.