# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-01008-COA

**ARQUETTE STEPHENS, INDIVIDUALLY AND ON BEHALF OF THE HEIRS AND WRONGFUL DEATH BENEFICIARIES OF ANTHONY LEWELLYN, DECEASED**

APPELLANT

**v.**

**CITY OF GULFPORT, MISSISSIPPI AND HARRISON COUNTY, MISSISSIPPI**

APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 08/31/2022 |
| TRIAL JUDGE: | HON. RANDI PERESICH MUELLER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | ROGEN CHHABRA KATHRYN CAROLINE BOYD |
| ATTORNEYS FOR APPELLEES: | JEFFREY S. BRUNI TIM C. HOLLEMAN |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 01/30/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McDONALD AND EMFINGER, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Anthony Lewellyn took his wife, Arquette Stephens, and their children to visit Dedeaux Park (Park) in Gulfport, Mississippi, on a Sunday afternoon.  Lewellyn subsequently drowned in the Biloxi River while trying to rescue his sixteen-year-old stepdaughter from the river.  The family accessed the river from an area where it runs adjacent to a strip of sand abutting the Park.  The Park is on property owned by Harrison County and was maintained and operated by the City of Gulfport when the accident

happened.

¶2. Stephens, on behalf of herself and others, filed a wrongful death action against the County and the City under the Mississippi Tort Claims Act (MTCA), Mississippi Code Annotated sections 11-46-1 to -23 (Rev. 2019). Stephens asserted a premises liability claim against the Defendants for their allegedly negligent failure to protect Lewellyn from and warn him of "the dangerous condition" that existed at the Park (the Biloxi River) and that "creat[ed] a hazard for [Park visitors]." Later, in response to the summary judgment motions filed by the County and the City, Stephens acknowledged that the Biloxi River was not on the Park's premises, but she asserted that the County and the City were still liable for Lewellyn's death because the Park allowed access to the adjacent dangerous condition of the Biloxi River.

¶3. The Harrison County Circuit Court granted summary judgment in favor of the Defendants after finding that the Biloxi River was not "on property" of the Defendants; thus, the Defendants could not be held liable under the MTCA for an accident that occurred on the river. Miss. Code Ann. § 11-46-9(1)(v).[1] Further, the circuit court found that even assuming the Biloxi River could be considered under the ownership or control of either Defendant, the Defendants were exempt from liability because any dangers posed by the river were "obvious

---

[1] Section 11-46-9(1)(v) provides that "[a] governmental entity . . . shall not be liable for any claim . . . [a]rising out of an injury caused by a dangerous condition on the property of the governmental entity . . . [and] shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care."

2

to one exercising due care." *Id.*

¶4.    Stephens appeals, asserting that the County and the City were not entitled to immunity pursuant to section 11-46-9(1)(v) because (1) the County, as the Park's owner, and the City, as the Park's operator, breached the duty owed Lewellyn as either a Park invitee or licensee under Mississippi premises liability law by failing to protect him and warn him of the dangerous condition adjacent to the Park—the Biloxi River; and (2) the "dangerous condition" of the Biloxi River was not "obvious to one exercising due care" so as to allow immunity pursuant to the open-and-obvious-danger defense contained in section 11-46-9(1)(v).

¶5.    Based upon our de novo review of the record, we affirm the circuit court's granting of summary judgment in the County and the City's favor for the reasons addressed below.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶6.    On a Sunday afternoon on May 19, 2019, Lewellyn took his family to see the Park and the Biloxi River, which is a natural river flowing south to the Back Bay of Biloxi. The Park is located within a subdivision on property owned by the County, and the City maintained and operated the Park at that time.

¶7.    Adjacent to the Park was a small beach that then abutted the Biloxi River. As shown by the subdivision plat and based on the description contained in the plat, the eastern boundary of the Park ends at the "meandering line of the high bank of the Biloxi River," so neither the beach nor the Biloxi River is within Park property.

3

¶8.     As Stephens stated in her deposition, the family had no plans to swim that afternoon; they just intended to "hang out a little bit." But eventually the children began playing in the shallows of the Biloxi River. Stephens and Lewellyn also waded into the river, about waist-deep. Stephens said that the children were not good swimmers. She further said that she knew about the danger of drowning and that she and Lewellyn told the children to stay in the shallow water for their protection.

¶9.     As they were playing in the shallow water of the river, the children began tossing a beach ball they had found. At one point, the ball was tossed or floated farther out into the river, and sixteen-year-old Destinei went after it. The current carried her into deeper parts of the river, and she could not return to the shallow water. Lewellyn swam out to the deeper part of the Biloxi River to try and rescue her. Destinei was able to get to safety. Tragically, however, Lewellyn was carried farther downriver and drowned.

¶10.    After the accident, Stephens, on behalf of herself and wrongful-death beneficiaries, filed a wrongful death lawsuit against the County and the City under the MTCA, alleging that the Defendants failed to protect Lewellyn from or warn him about a "dangerous condition" allegedly existing "in the Park" and "present on the property of Defendants." The County and the City answered, asserting various defenses, including immunities and exemptions from liability pursuant to the MTCA. The parties exchanged written discovery, and Stephens and some of her children, including Destinei, were deposed.

¶11.    Following discovery, both the County and the City filed motions for summary

4

judgment, asserting that they were not liable for Lewellyn's drowning death in the Biloxi River because the river was not on property owned, operated, or controlled by the Defendants. They asserted that because no genuine issue of material fact existed on this fundamental issue, the Defendants were entitled to judgment as a matter of law. The Defendants also asserted that even if the Biloxi River could be considered under the ownership or control of the Defendants, they were exempt from liability pursuant to section 11-46-9(1)(v) because any alleged dangerous condition was "obvious to one exercising due care." Miss. Code Ann. § 11-46-9(1)(v).

¶12. In response, Stephens no longer asserted that the Biloxi River was on property owned or controlled by the Defendants. Rather, acknowledging that this was not the case, Stephens asserted that the Defendants were liable for Lewellyn's death because Lewellyn and his family accessed the beach and the Biloxi River from the Park; "and but for this access," they would not have been present, and Lewellyn would not have drowned. Stephens asserted that the County and the City therefore owed Lewellyn a duty as an invitee or licensee and breached that duty by failing to protect him from or warn him of the dangerous conditions relating to the Biloxi River. Stephens also asserted that the risk of drowning in the river was not open and obvious to Lewellyn; thus, the Defendants were not entitled to immunity pursuant to section 11-46-9(1)(v).

¶13. After conducting a hearing and considering the parties' arguments, the evidence, and the applicable law, the circuit court granted summary judgment in the Defendants' favor.

¶14. Stephens appeals.

## STANDARD OF REVIEW

¶15. "We review the grant of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the party against whom the motion has been made." *Campbell v. Harrison Cnty. Bd. of Supervisors*, 269 So. 3d 1269, 1273 (¶13) (Miss. Ct. App. 2018) (internal quotation marks omitted) (quoting *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013)). Additionally, "[i]mmunity is a question of law[,]" and, therefore, we also "conduct[] a de novo review of the application of the MTCA." *City of Jackson v. Harris*, 44 So. 3d 927, 931 (¶19) (Miss. 2010) (internal quotation marks omitted).

¶16. "The party requesting summary judgment bears the burden of demonstrating that no genuine issue of material fact exists." *Wood v. Reynolds*, 316 So. 3d 208, 211 (¶17) (Miss. Ct. App. 2021). In rebuttal, the "opponent to the summary judgment motion must . . . produc[e] significant probative evidence showing that there are indeed genuine issues for trial." *Id.* (internal quotation marks omitted). "We will affirm . . . an order granting summary judgment if the record 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Campbell*, 269 So. 3d at 1273 (¶13) (quoting M.R.C.P. 56(c)).

## DISCUSSION

I.    **Dangerous Condition Adjacent to Property Owned, Operated, or Maintained by a Governmental Entity**

¶17. Stephens acknowledges that the Biloxi River is not on property owned, operated, or

6

maintained by the County or the City but asserts that "but for" the family having access through the Park to the Biloxi River (the alleged "dangerous condition"), Lewellyn would not have drowned. Stephens relies on general Mississippi premises liability law to argue that the County and the City owed a duty to Lewellyn as a Park invitee or licensee to protect him from or warn him about this dangerous condition existing adjacent to the Park and accessible through the Park. According to Stephens, the Defendants breached this duty and therefore are liable for Lewellyn's death.[2] In short, Stephens proposes an expanded form of premises liability law imposing liability on a landowner or operator for an alleged "dangerous condition" existing on adjacent property.

¶18.    We reject this contention because we find no Mississippi caselaw or statute supporting it. That is, we find no Mississippi law expanding Mississippi premises liability law to impose a duty on a governmental entity to protect or warn against alleged dangerous conditions on property *adjacent* to property owned or operated by that governmental entity

---

[2] As noted, Stephens did not allege these circumstances in her complaint. Rather, in her complaint Stephens alleged that the "dangerous condition" existed "in the Park" and was "present on the property of [d]efendants." In response to the summary judgment motions filed by the County and City, however, Stephens raised the same argument she now asserts on appeal: The County and City are liable for Lewellyn's drowning because the family accessed the Biloxi River through the Park and the County and City failed to protect or warn against the dangerous condition of the adjacent Biloxi River. The circuit court considered this argument in ruling on the summary judgment motions, and we find no objection in the record to Stephens's revised argument introduced at the summary judgment stage. As such, we find that "the issue was tried by implied consent of the parties," in the circuit court and we may properly consider it here. *Presswood v. Cook*, 658 So. 2d 859, 861-62 (Miss. 1995) (determining that an issue raised and considered at the summary judgment stage without objection may be considered on appeal).

7

and not caused by the governmental entity, as Stephens proposes here. As detailed below, we affirm summary judgment in favor of the County and the City because the alleged dangerous condition—a naturally occurring river—was not on the Park's property, nor was any alleged dangerous condition presented by the river caused by the County or the City.

¶19. We recognize that the MTCA waives "the immunity of the state and its political subdivisions from claims for money damages arising out of the torts of such governmental entities," Miss. Code Ann. § 11-46-5 (Rev. 2021), in accordance with the specific limitations and conditions delineated in the MTCA. Although the Legislature has waived immunity in some contexts, the MTCA also sets forth certain situations in which sovereign immunity still applies. *See* Miss. Code Ann. § 11-46-9(1). Relevant here, section 11-46-9(1)(v) provides:

> A governmental entity . . . shall not be liable for any claim:
>
> . . . .
>
>> [a]rising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care . . . .

¶20. To prevail when a governmental entity has raised section 11-46-9(1)(v) as a defense in a premises liability case, as the County and the City have done here, Stephens "must show: (1) a dangerous condition, (2) *on the government entity's property*, (3) which the government

entity caused, or of which it had notice and time to protect or warn against, and (4) *the condition was not open and obvious*." *Ladner v. Stone County*, 938 So. 2d 270, 274 (¶15) (Miss. Ct. App. 2006) (emphasis added) (citing Miss. Code Ann. § 11-46-9(1)(v) (Rev. 2002)); *accord McGee v. Neel Schaffer Eng'rs & Planners Inc.*, 350 So. 3d 236, 247 (¶41) (Miss. Ct. App. 2022).

¶21. The alleged "dangerous condition" in this case is the Biloxi River, a naturally occurring river. The record is clear that Lewellyn drowned in the Biloxi River, and the Biloxi River is not "on property" of the County or the City. The Biloxi River runs adjacent to the Park, not through it. The Park's eastern boundary ends at the "high bank of the Biloxi River"; thus, neither the beach nor the Biloxi River is within Park property. Further, no evidence in the record shows that the County or the City did anything to create or contribute to any alleged dangerous condition existing in the Biloxi River or that either governmental entity exercised any control over the river or its condition.

¶22. We find it relevant that, generally speaking, "[a]n owner or occupier of land . . . owes no duty to warn or protect others from a dangerous condition on adjacent property unless the owner creates or contributes to such a condition, or the owner has sufficient control over the adjoining property." 65A C.J.S. *Negligence* § 399 (updated Aug. 2023).[3] Consistent with

---

[3] We recognize that other states have created exceptions to this general principle. *See, e.g.*, *Collins v. Marriott Int'l Inc.*, 749 F.3d 951, 957 (11th Cir. 2014) (applying Florida's "zone of risk" doctrine and holding that "[a]s part of the duty to maintain the premises in a reasonably safe condition, a property owner also has a duty to maintain the property to prevent foreseeable risks that exist on adjacent property"). Similarly, in *Yanez v. WWGAF*

this general principle, we find no Mississippi law imposing liability on a governmental entity under the circumstances in this case—i.e., where the alleged dangerous condition is a naturally occurring geographic feature adjacent to the subject premises and where the governmental entity has not exerted any control or contributed to the alleged dangerous condition existing on the adjacent property.

¶23.    Rather, section 11-46-9(1)(v) essentially "serves to restate the same premises liability principles [that] are applicable in non-MTCA cases," Robert A. Weems & Robert M. Weems, *Mississippi Law of Torts* § 16:22, at 382 (2d ed. 2008), and, thus, requires as an initial matter that the alleged "dangerous condition" be "on property of the governmental entity." Miss. Code Ann. § 11-46-9(1)(v); *Ladner*, 938 So. 2d at 274 (¶15).  This language tracks Mississippi law recognizing that "premises liability is a theory of negligence that establishes the duty owed to someone injured *on a landowner*[*'s*] *premises as a result of conditions or activities on the land*." *Double Quick Inc. v. Moore*, 73 So. 3d 1162, 1165 (¶8)

---

*Inc.*, No. 5:19-CV-1065-DAE, 2021 WL 5194731, at *8 (W.D. Tex. May 19, 2021), the United States District Court for the Western District of Texas recognized that "[u]nder Texas law, landowner liability is generally limited to dangerous conditions on premises possessed by the landowner" but noted an "assumed duty" exception providing:

> [W]here an obscured danger exists on land directly appurtenant to the land owned or occupied, and where that danger is near a place where invitees enter and exit the landowner's or occupier's property, the owner or occupier owes a duty to those invitees entering and exiting to warn of the danger.

However, we find no Mississippi Supreme Court precedent or any Mississippi cases or statutes recognizing any similar exception, nor has the appellant cited any.  We therefore decline to adopt or create any exception to the general rule as stated above.

(Miss. 2011) (emphasis added) (internal quotation marks omitted) (quoting *Doe v. Jameson Inn Inc.*, 56 So. 3d 549, 553 (¶11) (Miss. 2011)).

¶24. Thus, to succeed in her premises liability lawsuit, Stephens must "prove, by a preponderance of the evidence, that the defendant[s] owed her a duty, that the defendant[s] breached that duty, that the plaintiff suffered damages, and that the breach caused the plaintiff's damages." *Thomas v. Boyd Biloxi LLC*, 360 So. 3d 204, 213 (¶33) (Miss. 2023). In this case, without evidence that the alleged dangerous condition was "on property of the governmental entity," Stephens has failed to show that the County or the City owed *any* duty to Lewellyn. We therefore find that Stephens's claims against the County and the City fail as a matter of law.

¶25. Despite these facts and the lack of supporting Mississippi authority, Stephens relies on general Mississippi premises liability law to assert that the County and the City owed Lewellyn a duty of care as an invitee or licensee on the *Park* premises for the alleged dangerous condition of the Biloxi River flowing *adjacent* to the Park. We disagree.

¶26. Regarding invitee status, a landowner or operator owes "a duty to an invitee to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition or warn of dangerous conditions not readily apparent, which owner or occupant knows of, or should know of, in the exercise of reasonable care." *Fulton v. Robinson Indus. Inc.*, 664 So. 2d 170, 175 (Miss. 1995). According to Stephens, if Lewellyn was a Park invitee, the duty owed to him encompassed a duty to protect him from or warn him of the alleged dangerous

11

condition of the adjacent Biloxi River. Stephens cites no Mississippi authority for this proposition. Indeed, as addressed above, we reject this argument because we likewise find no Mississippi law to support it.

¶27. But even if such authority existed, an "invitee is still required to use in the interest of his own safety that degree of care and prudence which a person of ordinary intelligence would exercise under the same or similar circumstance." *Campbell*, 269 So. 3d at 1275 (¶19) (quoting *Fulton*, 664 So. 2d at 175). We find that Stephens failed to present significant probative evidence to create a genuine issue of fact on this issue. *See Wood*, 316 So. 3d at 211 (¶17).

¶28. Stephens said in her deposition that the family did not intend to go in the water that day, so they did not have life preservers or any kind of swimming gear. Stephens and Lewellyn knew that "the children were not good swimmers," but the children had "found a beach ball," and eventually Stephens and Lewellyn allowed the children to play in the river. Although they cautioned the children to stay in the "shallow water," they knew the children were playing with the beach ball, that the children "were not good swimmers," and that the family had no protective swim gear such as life preservers. The beach ball bounced into deeper water, Destinei tried to retrieve it, and ultimately Lewellyn drowned when he tried to rescue Destinei.[4]

---

[4] We also acknowledge that a draft of Lewellyn's death certificate was included in the record as Exhibit 1 to Stephens's deposition. It states that "acute alcohol intoxication" was a "significant condition[]" contributing to his death. A toxicology report was attached

¶29. Stephens was required to rebut this evidence by presenting "significant probative evidence" creating a genuine issue of material fact, *Wood*, 316 So. 3d at 211 (¶17), whether Lewellyn and his family failed to exercise reasonable care "in the interest of [their] own safety." *Campbell*, 269 So. 3d at 1275 (¶19). We find that on the record before us, Stephens failed to do so. We therefore reject Stephens's invitee-status argument for this additional reason.

¶30. Alternatively, Stephens asserts that Lewellyn was a licensee on the Park property, and the duty owed Lewellyn as a licensee extended to the Biloxi River—the alleged dangerous condition that lies adjacent to the Park. As noted, we reject this argument because the Biloxi River is not "on property of the [County or City]." Miss. Code Ann. § 11-46-9(1)(v). Thus no duty was owed Lewellyn. But even if he were owed a duty as a licensee, we find that neither the County nor the City breached this duty.

¶31. *Holley v. International Paper Co.*, 497 So. 2d 819 (Miss. 1986), involved somewhat similar facts, but we find it distinguishable in some respects. In *Holley*, a sixteen-year-old boy (Holley) was injured when he dove from a rope swing into the Wolf River that flowed through International Paper Company's (IP) property. *Id.* at 819-20. Holley sued IP for damages incurred as a result of his injuries. *Id.* at 819. The circuit court granted summary judgment in IP's favor, finding that Holley was a licensee as a matter of law and that he failed to offer any evidence that IP breached the duty owed to him as a licensee. *Id.* The

---

to Lewellyn's draft death certificate and showed his blood alcohol concentration was 0.119.

supreme court affirmed. *Id.* at 821.

¶32. In addressing Holley's status, the supreme court did not discuss the boundaries of the Wolf River but, rather, simply described it as "part of a 170,000-acre tract owned by appellee, International Paper Company." *Id.* at 820. "The general public was not prohibited from using the area and swimming in the river, although no charge or admission was collected." *Id.* Under these circumstances, the supreme court held that Holley was, "at best[,] . . . a licensee by implication." *Id.*

¶33. We do not find that *Holley* supports an argument that Lewellyn was a licensee in the case before us. *Holley* does not involve a governmental entity or application of section 11-46-9(1)(v). More importantly, *Holley* does not address a governmental entity's liability where, as here, the river flows adjacent to (rather than through) the subject premises, and the undisputed evidence shows that the premises' legal boundaries do not encompass the river in any way.

¶34. In any event, "the only duty owing to [a licensee is] to refrain from wilfully or wantonly injuring him." *Holley*, 497 So. 2d at 820. In *Holley*, the supreme court found that the record contained "no charge or indication that [IP] had done anything to [the] Wolf River . . . [where Holley was injured] [that] caused it to be dangerous and hazardous" and, thus, affirmed summary judgment in IP's favor. *Id.* Likewise, in this case, even if Lewellyn could be considered a licensee, we find no evidence in the record that the County or the City did anything to "wilfully or wantonly injur[e] [Lewellyn]" or did anything to the Biloxi River

14

that "caused it to be dangerous and hazardous." *Id.* at 820-21. It is a naturally flowing river. As such, we find that Stephens presented no evidence to create a genuine issue of material fact that the County or the City breached any purported duty to Lewellyn as a licensee.

## II. Open and Obvious Defense Pursuant to Mississippi Code Annotated Section 11-46-9(1)(v) (Supp. 2016)

¶35. Stephens asserts that the County and the City are liable for Lewellyn's death because they failed to protect him from and warn him and his family of the alleged dangerous condition of the adjacent Biloxi River. As discussed above, we find that neither the County nor the City owed any duty to protect Lewellyn from or warn him of this *adjacent* alleged dangerous condition, and even if a duty were owed to Lewellyn as a Park invitee or licensee, we find that neither governmental entity breached any such duty.

¶36. Nevertheless, even if these elements of Stephens's premises liability claim had been met, we also affirm summary judgment in the County and the City's favor on Stephens's failure-to-warn claims pursuant to the "open and obvious" defense contained in section 11-46-9(1)(v). Namely, section 11-46-9(1)(v) provides "that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care." This provision "is a complete bar in a Tort Claims Act case for the failure to warn of a dangerous condition," *City of Natchez v. Jackson*, 941 So. 2d 865, 876 (¶33) (Miss. Ct. App. 2006), which Stephens asserts here.[5]

---

[5] We recognize that the open and obvious defense under section 11-46-9(1)(v) "is not a bar to recovery when the issue is the government's negligent maintenance or repair which

15

¶37. Based on our review of the record, we find that the alleged dangerous condition of the Biloxi River was "obvious" to Stephens and Lewellyn and that Stephens failed to present adequate probative evidence that a genuine issue of material fact exists as to this issue. As Stephens stated in her deposition, she and Lewellyn knew that "the children were not good swimmers," so when she and Lewellyn ultimately let the children play in the river, they warned the children that they must stay in the shallow water. Stephens admitted that she and Lewellyn warned the children to stay in the shallow water "to protect them" because she and Lewellyn knew of the danger of drowning if the children went any deeper. Stephens and Lewellyn went "about waist deep" into the river. Stephens admitted that as she and Lewellyn went into the waist-deep water, they recognized that there were different depths in the river, and they "didn't go [toward] the right because that was where the current was." Plainly, Stephens and Lewellyn knew the Biloxi River had currents and changing depths, and they knew to avoid these areas.

¶38. Although Stephens asserts on appeal that the dangerous condition of the river was "not obvious," her only apparent rebuttal to the circumstances described above is that "the

---

led to the dangerous condition," or whether the government negligently created the condition. *Jackson*, 941 So. 2d at 876 (¶33). Although Stephens primarily asserts that the County and the City failed to warn of the alleged dangerous condition of the Biloxi River, she also asserts that the County and the City should have "closed the Park" to protect Lewellyn and his family from accessing the river. We find that although the open and obvious defense pursuant to section 11-46-9(1)(v) does not appear to apply to this particular assertion, we specifically reiterate that summary judgment is warranted on *all* of Stephens's claims for the reasons set forth in our discussion in Issue I above.

16

family did not visit the Park on May 19, 2019[,] with the intention to swim" or to "travel[] into depths of water they believed would pose a threat." It is unclear to this Court how these statements show that the alleged dangerous condition of the Biloxi River was not obvious to Stephens and Lewellyn. Indeed, we find that Stephens fails to point to any significant probative evidence in the record that would serve to create a genuine issue of material fact on this issue.

¶39. We further observe that there are inherent dangers of drowning in any body of water. This Court has recognized more than once that "[t]he risk of drowning in a pool is obvious." *Handy v. Nejam*, 111 So. 3d 626, 629 (¶7) (Miss. Ct. App. 2012) (quoting *Howze v. Garner*, 928 So. 2d 900, 904 (¶17) (Miss. Ct. App. 2005)). We find that the risk of drowning in a naturally flowing river is all the more obvious, given the currents and depth variations that create a "natural and inevitable risk to swimmers in such waters." *Hall v. Lemieux*, 378 So. 2d 130, 132 (La. App. 4 Cir. 1979). The record reflects that Lewellyn knew of these risks. For these reasons, we find that the County and the City are also entitled to summary judgment on Stephens's failure-to-warn claims pursuant to the open and obvious defense contained in section 11-46-9(1)(v).

¶40. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**